UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR RODRIGUEZ, an individual,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN JOAQUIN by and through the SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY; STEPHANIE EVANS, an individual; LYNN K. SAGA-MATSUMOTO, an individual, and DOES 1 through 9,<br><br>Defendants. | No.  2:16-cv-00770-TLN-JDP<br><br><br>**ORDER** |

This matter is before the Court pursuant to a Motion to Dismiss brought by Defendants County of San Joaquin through San Joaquin County Human Services Agency ("HSA"), Stephanie Evans ("Evans"), and Lynn K. Saga-Matsumoto ("Saga-Matsumoto") (collectively, "Defendants"). (ECF No. 13.) Plaintiff Victor Rodriguez ("Plaintiff") opposes the motion. (ECF No. 17.) Defendants have filed a reply. (ECF No. 20.) Having carefully considered the briefing filed by both parties and for the reasons set forth below, Defendants' Motion to Dismiss (ECF No. 13) is hereby GRANTED IN PART and DENIED IN PART.

///

///

1

1        **I.        FACTUAL AND PROCEDURAL BACKGROUND**

2              Plaintiff's claims arise from the investigation, court hearings, and resolution of a juvenile

3    dependency proceeding for minor, A.R.  (ECF No. 8 ¶¶ 14–30.)  Plaintiff asserts A.R. is his

4    biological daughter. (*Id.*)  When A.R. was born in 2012, she possessed the physical

5    characteristics of Fetal Alcohol Syndrome. (*Id.* at ¶ 16.)  A.R. first came to Defendants' attention

6    when A.R.'s mother, E.J., was arrested for child cruelty and public intoxication. (*Id.* at ¶ 15.)

7    E.J. had a long history of alcohol abuse and had lost her four older children due to her alcohol

8    dependency. (*Id.* at ¶ 16.)  When HSA employees interviewed E.J. about A.R.'s biological father,

9    she informed them that another man, K.R., had signed a declaration of paternity and was listed on

10   A.R.'s birth certificate, and A.R.'s "acting father" was E.J.'s current boyfriend, R.S. (*Id.* at ¶¶

11   16–17.)  K.R. confirmed he was listed on A.R.'s birth certificate but had taken a DNA test which

12   proved he was not A.R.'s biological father and "was working on having his name removed from

13   her birth certificate[.]"  (*Id.* at ¶ 16.)

14             On April 2, 2013, HSA filed a petition on behalf of A.R. to institute juvenile dependency

15   proceedings. (*See id.* at ¶¶ 18–19.)  Defendants submitted numerous reports to the juvenile

16   dependency court which detailed E.J.'s extensive criminal history involving alcohol abuse, child

17   endangerment, and her history with child protective services. (*Id.* at ¶ 19.)  Included in the

18   petition was a police report, which detailed an altercation that occurred on July 26, 2012. (*Id.* at ¶

19   20.) The police report indicated E.J. had been drinking with Plaintiff when an altercation ensued

20   and E.J. attacked Plaintiff. (*Id.*)  Witness statements from both Plaintiff and E.J. acknowledge

21   that E.J. was five-months pregnant with Plaintiff's child. (*Id.*)  In addition, the jurisdiction report

22   submitted by Defendants identified Plaintiff as a potential witness for the juvenile dependency

23   proceedings. (*Id.*)  Plaintiff alleges that, despite the information in this police report, Defendants

24   represented to the juvenile dependency court that the identity and location of A.R.'s father were

25   unknown. (*Id.* at ¶ 21.)

26             At a detention hearing on April 3, 2013, K.R. appeared and told the juvenile dependency

27   court he was not A.R.'s true father. (*Id.* at ¶ 22.)  HSA obtained a copy of A.R.'s birth certificate

28   ///

                                                          2

and found there was no father listed.  (*Id.*)  K.R. never appeared in the juvenile dependency hearings again.  (*Id.*)

At the jurisdiction hearing on April 15, 2013, the juvenile dependency court proceeded in K.R.'s absence and relied upon the signed Declaration of Paternity to declare K.R. to be A.R.'s presumed father.  (*See id.* at ¶¶ 22–23.)

At the disposition hearing on February 6, 2014, the juvenile dependency court scheduled a hearing pursuant to California Welfare and Institutions Code § 366.26 ("§ 366.26") for June 4, 2014.[1]  (ECF No. 8 ¶ 24.)  In preparation for this hearing, Evans prepared a declaration stating she attempted to determine the unknown identity of A.R.'s father but was unsuccessful.  (*Id.* at ¶ 25.)  The court gave Evans permission to publish a citation in the local newspaper, The Record, to provide notice to A.R.'s unknown father to appear for the hearing.  (*Id.*)  The newspaper published the notice for four consecutive weeks, but no father came forward.  (*See id.* at ¶¶ 25, 27, 29.)

After multiple continuances, the § 366.26 hearing was held on February 6, 2015.  (*Id.* at ¶ 29.)  On June 15, 2015, the juvenile dependency court terminated the parental rights of all unknown fathers.  (*See id.*)  Plaintiff alleges Defendants never attempted to contact him prior to the § 366.26 hearing, despite having the July 2012 police report with Plaintiff and E.J.'s statements that Plaintiff was A.R.'s biological father.  (*See id.* at ¶¶ 20, 29.)  He further alleges Defendants withheld this information from the juvenile dependency court and Evans instead misrepresented to the court that K.R. was A.R.'s biological father.  (*See id.* at ¶¶ 20, 33; *see also id.* at ¶ 27 (Evans requested to provide notice of the § 366.26 hearing to K.R. through his attorney).)  As a result, Plaintiff contends he did not receive proper notice for any hearings related to A.R.'s juvenile dependency proceedings.  (*Id.* at ¶ 34.)

Plaintiff alleges that, throughout this time period, he continuously sought out E.J. and A.R. by contacting known relatives but was unsuccessful.  (*Id.* at ¶ 31.)  Plaintiff contacted HSA in 2013 and sought out the social worker on the case — Evans.  (*Id.*)  He informed Defendants he

---

[1]      A § 366.26 hearing is a hearing to terminate the "parental rights or establish guardianship of children adjudged dependent children of court."  Cal. Welf. & Inst. Code § 366.26.

was the witness "V.R." from the July 2012 police report that was identified as A.R.'s biological father. (*Id.*)  He also requested a DNA test to prove his relationship to A.R., but the Defendants declined to make A.R. available for the testing. (*Id.* at ¶ 32.)

On July 29, 2015, Plaintiff filed a petition with the juvenile dependency court and requested the court vacate all orders made regarding A.R.'s father. (*Id.* at ¶ 34.)  Defendants opposed the petition on the basis that the rights of any potential fathers had been terminated. (*Id.*)  The juvenile dependency court denied Plaintiff's petition.[2]  (ECF No. 14 at 5–6.)  Plaintiff appealed the decision, but the appellate court affirmed the denial. (*Id.* at 4–8.)

Plaintiff initiated this action on April 14, 2016, but never served Defendants. (ECF No. 1; ECF No. 13 at 3.)  On January 6, 2017, Plaintiff filed his First Amended Complaint ("FAC"), and served Defendants seven months later, on July 19, 2017. (ECF No. 13 at 3.)  The operative FAC asserts seven causes of action against Defendants, for violations of Plaintiff's constitutional rights under 42 U.S.C. § 1983 ("§ 1983") and violations of state law: (1) First Amendment Interference with Familial Relations and (2) 14th Amendment Due Process against Evans and Saga-Matsumoto; (3) *Monell* Liability against HSA; (4) Negligence against all Defendants; (5) Negligent Hiring, Retaining, and Training against HSA; and (6) Intentional Infliction of Emotional Distress and (7) Negligent Infliction of Emotional Distress against Evans and Saga-Matsumoto. (ECF No. 8 at 1.)

On September 6, 2017, Defendants filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (ECF No. 13.)  Defendants move to dismiss all counts arguing that: (1) Plaintiff failed to timely serve Defendants under F.R.C.P. Rule 4(m); (2) Plaintiff fails to state a claim for relief under Rule 12(b)(6); (3) Defendants are entitled to qualified immunity; and (4) Plaintiff's claims against HSA fail to allege an unconstitutional policy or practice to show the County of San Joaquin is responsible for Plaintiff's harm. (*Id.*)

---

[2]  Defendants request the Court take judicial notice of the order issued by the Third District Court of Appeal (San Joaquin) regarding Plaintiff's petition, which was filed in the case *In re A.R.*, No. C080588 (Aug. 10, 2016). (ECF No. 14.)  Defendants' request, which Plaintiff does not oppose, is hereby GRANTED. Fed. R. Evid. 201(b); *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002) (a court may take judicial notice of court records).

## II.   STANDARD OF LAW

### A.   Federal Rule of Civil Procedure 4(m)

Rule 4(m) requires the plaintiff to serve a defendant "within 90 days after the complaint is filed." Fed. R. Civ. P. 4(m).  If the defendant is not served within 90 days, the court "must dismiss the action without prejudice against the defendant," unless the plaintiff "shows good cause for the failure." *Id.*  Rule 4(m) requires a "two-step analysis" for determining relief. *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001).  First, the district court "must extend the time period" for service upon a showing of good cause. *Id.*  When determining whether the good cause requirement has been satisfied, the court must consider whether: "(a) the party to be served personally received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed." *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991) (citing *Hart v. United States*, 817 F.2d 78, 80–81 (9th Cir. 1987)).

Second, if good cause is not established, "the court has the discretion to dismiss without prejudice or to extend the time period." *Sheehan*, 253 F.3d at 512.  On its face, "Rule 4(m) does not tie the hands of the district court after the 120–day period has expired." *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007) (citation omitted).  Rather, "Rule 4(m) explicitly permits a district court to grant an extension of time to serve the complaint after the 120–day period." *Id.* In making this decision, courts may consider factors such as "a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service." *Id.* (citation omitted).

### B.   Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S.

544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant–unlawfully–harmed–me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff has failed to "nudge[] [his] claims . . . across the line from conceivable to plausible," is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a

context–specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

If a complaint fails to state a plausible claim, "[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint." *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### III.   ANALYSIS

The Court will first address Defendants' argument that the case should be dismissed due to Plaintiff's failure to timely serve Defendants under Rule 4(m). (ECF No. 13 at 9.) Next, the Court will address Plaintiff's claims as asserted against each Defendant.

### A.   Federal Rule of Civil Procedure 4(m)

Defendants argue this action should be dismissed due to Plaintiff's failure to serve Defendants within the 90 days required under Rule 4(m). (ECF No. 13 at 9.) In fact, Plaintiff served Defendants for the first time approximately seven months after filing his FAC. (*Id.*) Plaintiff concedes he served Defendants after the 90-day period allowed by Rule 4(m). (ECF No. 17 at 14.) However, he attributes the delay to numerous internal issues within his counsel's law firm and argues these issues amount to good cause. (*Id.*)

Applying the two-step analysis for determining relief under Rule 4(m), the Court first considers whether good cause exists to extend the time period. *Sheehan*, 253 F.3d at 512; *Boudette*, 923 F.2d at 755–56. As discussed, the good cause determination is based on whether the party to be served personally received actual notice of the lawsuit and consideration of the prejudice that would result to the parties. *Boudette*, 923 F.2d at 756.

Here, Plaintiff claims Defendants received actual notice of the lawsuit in October 2015, when Plaintiff served a claim for damages under the California Tort Claims Act. (ECF No. 17 at 15.) This claim provided a "written summary of the factual basis for Plaintiff's claims and intent to file a lawsuit." (*Id.*) The Court therefore finds the first factor weighs in favor of good cause. As to the second factor, Defendants argue they will suffer prejudice if the Court extends the service time because Evans has retired and no longer has access to her old files. (ECF No. 20 at 5.) Thus, Defendants will face difficulties in preparing for her defense. (*Id.*) The Court finds this factor weighs against good cause. As to the third factor, however, the Court finds Plaintiff will be significantly prejudiced if he is ordered to refile his lawsuit because he will likely be barred by the statute of limitations for his claims. (ECF No. 17 at 15); *Maldonado v. Harris*, 370 F.3d 945, 954–55 (9th Cir. 2004) (California statute of limitations for § 1983 claims is two years). Therefore, on balance, the Court finds the factors weigh in favor of finding good cause exists to extend the time period for service under Rule 4(m). *Boudette*, 923 F.2d at 756.

Further, even absent a finding of good cause, the Court exercises its discretion to extend the time period in this case, *Sheehan*, 253 F.3d at 512, based on the finding that the statute of limitations would cause Plaintiff to be severely prejudiced if the case is dismissed. *See Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2009) ("Exercise of discretion to extend time to complete service is appropriate when, for example, a statute-of-limitations bar would operate to prevent re-filing of the action."). The Court additionally accepts Plaintiff's explanations for the delay in service. (*See* ECF No. 17 at 14–15; ECF No. 18 (declaration of counsel).)

For these reasons, the Court DENIES Defendants' motion to dismiss pursuant to Rule 4(m).

B.    Defendant Saga-Matsumoto

Defendants move to dismiss Saga-Matsumoto from the lawsuit because Plaintiff did not allege any factual allegations against her. (ECF No. 13 at 11.) Plaintiff does not object to Saga-Matsumoto's dismissal but requests the dismissal be without prejudice to adding Saga-Matsumoto if discovery later reveals her involvement in this action. (ECF No. 17 at 8.) If Plaintiff wishes to bring claims against Saga-Matsumoto at a later date, he may file a motion to

1    do so pursuant to Rule 15.  Accordingly, the Court GRANTS Defendants' Motion to Dismiss all

2    claims asserted against Saga-Matsumoto and DISMISSES Saga-Matsumoto from this action

3    without prejudice.

4                    C.       Federal Claims

5             Plaintiff asserts three federal claims under § 1983: (1) First Amendment interference with

6    familial relations against Evans (Claim 1); (2) Fourteenth Amendment procedural and substantive

7    due process violations against Evans (Claim 2); and (3) *Monell* Liability against HSA (Claim 3).

8    (ECF No. 8 at 13–16.)  Defendants move to dismiss the individual constitutional claims on the

9    basis that Evans is entitled to qualified immunity.  (ECF No. 13 at 12.)  They seek dismissal of

10   the *Monell* claim for failure to state a claim, namely failure to establish deprivation of a

11   constitutional right.  (*Id.* at 19–20.)  The Court will address each claim in turn.

12                    i.       Section 1983

13            Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or

14   other federal rights by persons acting under color of state law.  *See Long v. Cty. of L.A.*, 442 F.3d

15   1178, 1185 (9th Cir. 2006).  "Section 1983 is not itself a source of substantive rights but merely

16   provides a method for vindicating federal rights elsewhere conferred." *Crowley v. Nevada ex rel.*

17   *Nevada Sec'y of State*, 678 F.3d 730, 734 (9th Cir. 2012) (citing *Graham v. Connor*, 490 U.S.

18   386, 393–94 (1989)).  To state a claim under § 1983, a plaintiff must allege facts from which it

19   may be inferred (1) he was deprived of a federal right, and (2) a person or entity who committed

20   the alleged violation acted under color of state law.  *Long*, 442 F.3d at 1185.  A plaintiff must

21   show a causal connection or link between the actions of the defendants and the deprivation

22   alleged to have been suffered by the plaintiff.  *See Rizzo v. Goode*, 423 U.S. 362, 373–75 (1976).

23   The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional

24   right, within the meaning of section 1983, if he does an affirmative act, participates in another's

25   affirmative acts, or omits to perform an act which he is legally required to do that causes the

26   deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)

27   (citation omitted).

28   ///

9

1

                                    *ii.     Qualified Immunity*

2        In § 1983 actions, qualified immunity "protects government officials from civil liability

3   where 'their conduct does not violate clearly established statutory or constitutional rights of

4   which a reasonable person would have known.'"  *Cunningham v. Kramer*, 178 F. Supp. 3d 999,

5   1003 (E.D. Cal. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  The doctrine

6   "gives government officials breathing room to make reasonable but mistaken judgments" and

7   "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Ashcroft v.*

8   *al-Kidd*, 563 U.S. 731, 743 (2011) (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

9   Qualified immunity is an affirmative defense; the burden of pleading it rests with the defendant.

10  *Crawford-El v. Britton*, 523 U.S. 574, 586–87 (1998) (citation omitted).

11       A qualified immunity analysis requires determining: (1) whether facts alleged, taken in the

12  light most favorable to the injured party, show the defendants' conduct violated a constitutional

13  right; and (2) whether the right was clearly established.  *Smith v. City of Chandler*, 667 F. App'x

14  648, 649 (9th Cir. 2016) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by*

15  *Pearson*, 555 U.S. 223 (2009)).  Courts may "exercise their sound discretion in deciding which of

16  the two prongs of the qualified immunity analysis should be addressed first in light of the

17  circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 236.  However, if the Court

18  initially addresses the first prong and finds that no constitutional right was violated under the

19  alleged facts, the inquiry ends, and the defendants prevail.  *Saucier*, 533 U.S. at 201.

20  In deciding the second prong, the Court considers whether the contours of the right were

21  sufficiently clear at the time that the action occurred so that "a reasonable official would

22  understand that what he is doing violates that right.'"  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

23  "The dispositive question is whether the violative nature of *particular* conduct is clearly

24  established."  *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 947 (9th Cir. 2017) (emphasis

25  in original) (internal quotations omitted).  This question must be answered "not as a broad general

26  proposition," but with reference to the facts of specific cases.  *Id.* (citing *Mullenix v. Luna*, 577

27  U.S. 7, 12 (2015)).  To determine whether a right is clearly established, a court "looks for cases of

28  controlling authority in the plaintiff's jurisdiction at the time or a consensus of cases of persuasive

                                              10

1  authority[.]" *Kramer v. Cullinan*, 878 F.3d 1156, 1163–64 (9th Cir. 2018) (citations omitted).

2  The plaintiff bears the burden of demonstrating the right at issue was clearly established. *Id.* at

3  1164.

4  <center>iii.     *First Amendment Interference with Familial Relations*</center>

5         Plaintiff claims Evans violated his constitutional right to familial association by "refusing

6  to acknowledge the clear evidence that Plaintiff was in fact the biological father of minor A.R.,

7  withholding the informal communications between Plaintiff and Defendants from the dependency

8  court, and opposing any attempts by Plaintiff to prove that he was and is in fact A.R.'s biological

9  father." (ECF No. 8 ¶ 40.) Defendants argue Plaintiff lacks standing under this claim because he

10  "failed to establish a legal parental right to A.R." and as a result, he cannot allege a violation of a

11  "non-existent right to familial association." (ECF No. 13 at 15–16.) The Court finds Defendants

12  have the better argument.

13         The flaw in Plaintiff's argument is that he has not established Evans violated any clearly

14  established right. "[T]he First Amendment protects those relationships, including family

15  relationships, that presuppose 'deep attachments and commitments to the necessarily few other

16  individuals with whom one shares not only a special community of thoughts, experiences, and

17  beliefs but also distinctively personal aspects of one's life.'" *Lee v. City of L.A.*, 250 F.3d 668,

18  685 (9th Cir. 2001) (quoting *Bd. of Dir. v. Rotary Club*, 481 U.S. 537, 545 (1987)) (citation

19  omitted). Thus, the Constitution protects "the parent-child relationship from unwanted

20  interference by the state." *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 788 (9th Cir. 2016).

21  However, "parental rights do not spring full-blown from the biological connection between parent

22  and child." *Id.* at 789 (quoting *Lehr v. Robertson*, 463 U.S. 248, 260 (1983)). Rather,

23        [i]t is when an unwed father demonstrates a full commitment to the
responsibilities of parenthood by coming forward to participate in the
24        rearing of his child, that his interest in personal contact with his child
acquires substantial [constitutional protection]. Until then, a person
25        with only potential parental rights enjoys a liberty interest in the
companionship, care, and custody of his children that is
26        unambiguously lesser in magnitude.

27  *Id.* at 789 (internal quotations and citations omitted). "[T]he mere existence of a biological link

28  does not merit equivalent constitutional protection." *Lehr*, 463 U.S. at 261. Thus, a person who

<center>11</center>

1    brings a familial association claim requires a "more enduring" relationship "which reflect[s] some

2    assumption of parental responsibility." *Kirkpatrick*, 843 F.3d at 788–89 (holding father could not

3    challenge the seizure of a child because he had failed to establish his parental rights as of the date

4    of the seizure).

5        Here, even accepting as true Plaintiff's allegations that he is A.R.'s biological father,[3]

6    Plaintiff fails to allege facts showing he had the type of parent-child relationship that is accorded

7    constitutional protection. *See Kirkpatrick*, 843 F.3d at 788–89. Indeed, Plaintiff alleges no facts

8    showing he has ever spent time with A.R. since she was born or even attempted to cultivate such

9    a relationship with her. On this basis alone, Plaintiff fails to demonstrate he is entitled to the First

10   Amendment protections related to familial relations.

11       In opposition, Plaintiff argues his right to "obtain status as a de facto or presumed parent

12   was foreclosed" when Evans told the juvenile court that she had no knowledge of and had not

13   located any of A.R.'s potential fathers. (ECF No. 17 at 19.) But this argument is premised on the

14   contention that a de facto parent's rights under California law are equated with the rights of a

15   legal parent for purposes of constitutional rights. They are not. *See e.g.*, *Olvera v. Cty. of*

16   *Sacramento*, 932 F. Supp. 2d 1123, 1141 (E.D. Cal. 2013) (citing *Miller v. Cal. Dep't of Soc.*

17   *Servs.*, 355 F.3d 1172, 1176 (9th Cir. 2004)) (holding, on Fourteenth Amendment claim, being de

18   facto parents merely conferred the right to appear in juvenile court proceedings and "no other, or

19   weightier interest of constitutional dimension"). Nor has Plaintiff identified any legal authority to

20   support the contention that he had a fundamental right to obtain status as a de facto parent.

21       Further, to the extent Plaintiff suggests Defendants prevented him from establishing the

22

23   [3]    Defendants dispute this contention on the bases that: (1) Plaintiff admits there is no DNA
     proof of this contention; (2) Plaintiff and E.J.'s witness statements included in the 2012 police
24   report similarly assert this belief with no other evidence (*see* ECF No. 8 ¶ 20); (3) E.J. did not
     identify A.R. as a potential father to the juvenile court or Defendants; (4) neither of the two men
25   E.J. *did* identify submitted any evidence to Defendants or the juvenile court that he was not
     A.R.'s biological father (*see id.* at ¶¶ 16–17, 22); (5) the legally-binding declaration of paternity
26   signed by K.R. indicates he is A.R.'s biological father (*id.* at ¶¶ 16–17); and (6) Plaintiff alleges
     no facts showing he pursued any of the legal remedies under California law (as set forth under
27   Cal. Fam. Code §§ 7500 *et seq.*) to establish legal parental rights (*see generally id.*). (*See* ECF
     No. 13 at 4–6, 16.)
28

requisite parent-child relationship, Plaintiff's contention is belied by his own allegations. Notably, despite knowing he was A.R.'s father in July 2012 and learning of the dependency case in 2013 when he contacted HSA and Evans (*see* ECF No. 8 ¶¶ 20, 31), Plaintiff nevertheless did not appear or seek to appear at any of the juvenile dependency proceedings, and he did not file his § 388 petition in the juvenile dependency court until July 29, 2015, nearly three years after A.R. was born.[4]  (*See* ECF No. 8 ¶¶ 22–24, 29 (dependency proceedings on April 3, 2013, April 15, 2013, February 6, 2014, and February 6, 2015); *id.* at ¶ 34 (petition).)

In sum, because Plaintiff cannot establish entitlement to First Amendment familial association protections as a matter of law, his claim for violations of that right necessarily fail. This deficiency cannot be cured by amendment. *Gardner*, 563 F.3d at 990.  In addition, Plaintiff has identified no legal authority that identifies any clearly established right of a biological parent with no prior interactions with his child — or a de facto parent — to First Amendment familial association protections.[5]  Consequently, no reasonable social worker in Evans's position would have known that her specific actions violated Plaintiff's constitutional rights.  Therefore, Evans is entitled to qualified immunity under both prongs of the *Saucier* analysis.  *Saucier*, 533 U.S. at

///

---

[4]      Plaintiff additionally alleges he was unable to attend the dependency hearings because Defendants caused him not to receive proper notice of any of the hearing dates.  (*See* ECF No. 8 ¶ 34.)  But this assertion is refuted by the fact that the § 366.26 hearing was noticed by publication for four weeks — which the juvenile dependency court deemed proper (*see id.* at ¶¶ 25, 27) — yet Plaintiff also failed to attend this hearing.  If Plaintiff seeks to dispute the sufficiency of the notice by publication ruling, he likely runs afoul of the *Rooker-Feldman* doctrine, which divests federal courts of subject matter jurisdiction where civil claims "are inextricably intertwined with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules."  *See Tali v. Liao*, No. 18-CV-00330-LHK, 2018 WL 5816171, at *3 (N.D. Cal. Nov. 5, 2018) (citing *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008)).  Therefore, the Court assumes without determining that the notice publication itself was proper and sufficient to provide Plaintiff notice of — at a minimum — the § 366.26 proceeding.

[5]      Plaintiff cites to several cases in support of his contention that he has a clearly established right to familial association.  (ECF No. 17 at 18.)  However, as Defendants correctly note, these cases are inapposite and therefore unavailing because they pertain to the rights of a foster parent contesting removal of a child already in his/her care.  (ECF No. 20 at 5–6.)  Plaintiff is neither a foster parent, nor did he have any prior relationship with A.R.

1   201.  Accordingly, the Court GRANTS Defendants' Motion as to this claim without leave to

2   amend.

3                     *iv.*     *Fourteenth Amendment Due Process*

4         The FAC asserts a claim for procedural and substantive due process violations under the

5   Fourteenth Amendment against Evans.  (ECF No. 8 at 14–15.)  As an initial matter, the Court

6   DISMISSES Plaintiff's procedural due process claim because Plaintiff only opposes Defendants'

7   Motion as to the substantive due process claim and does not oppose dismissal of the procedural

8   due process claim.  (*See* ECF No. 17 at 20–22.)  Next, the Court turns to Plaintiff's substantive

9   due process claim.

10         To establish a "substantive due process claim, a plaintiff must . . . show a government

11   deprivation of life, liberty, or property." *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d

12   1101, 1110 (9th Cir. 1010) (quoting *Nunez v. City of L.A.*, 147 F.3d 867, 871 (9th Cir. 1998)).

13   However, "before turning to the question of whether [Plaintiff's] due process rights were violated,

14   [the Court] must first determine whether there has been a deprivation of life, liberty, or property."

15   *Id.*

16         Here, Plaintiff alleges Defendants' actions deprived him of "a full and fair opportunity to

17   seek unification of his daughter." (ECF No. 8 ¶¶ 44, 49.)  Plaintiff claims Defendants caused this

18   deprivation when they: (1) failed to comply with unspecified provisions of the California Welfare

19   and Institutions Code and internal HSA policies; (2) affirmatively withheld from the juvenile

20   dependency court information that Defendants were communicating with Plaintiff about his

21   potential status as A.R.'s biological father; and (3) misrepresented to the juvenile dependency

22   court that the biological father was "unknown," despite knowledge that Plaintiff was A.R.'s

23   biological father. (*Id.* at ¶¶ 45–46, 48.)

24         In support of the argument that Evans is qualifiedly immune, Defendants' Motion focuses

25   mainly on the reasonableness of Evans's actions in light of the information available to her at the

26   time.  Namely, it was reasonable for Evans to rely on the information E.J. gave her about A.R.'s

27   potential fathers and K.R.'s signed declaration of paternity, which has "the same force and effect

28   as a judgment for paternity issued by a court of competent jurisdiction." (ECF No. 13 at 13

1    (citing Cal. Fam. Code § 7573).)  Further, in light of K.R.'s singular appearance at the April 3,

2    2013 proceeding to purportedly dispute, without providing supporting evidence, that he was

3    A.R.'s biological father, it was reasonable for Evans to seek the juvenile dependency court's

4    approval to publish notice of the § 366.26 hearing to all of A.R.'s potential fathers, in addition to

5    providing notice to K.R. specifically.  (*See id.* at 15–16.)  Further, Defendants argue Plaintiff has

6    not identified any clearly established right to familial association where he failed to establish a

7    legal parental right to A.R. before the juvenile dependency court terminated all potential fathers'

8    parental rights.  (*Id.* (citing *Kirkpatrick*, 843 F.3d at 788).)  Defendants again have the better

9    argument, as much of the Court's analysis with respect to Plaintiff's First Amendment claim is

10   applicable here as well.

11          As directed by the Ninth Circuit, the Court must first determine whether there has been a

12   deprivation of life, liberty, or property.  *Costanich*, 627 F.3d at 1110.  While Plaintiff alleges he

13   was deprived of "a full and fair opportunity to seek unification of his daughter," the protected

14   liberty interest he is clearly invoking is the right to familial association.  The Supreme Court has

15   recognized that the Fourteenth Amendment's Due Process Clause protects the liberty interest "of

16   parents in the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65

17   (2000); *see also Santosky v. Kramer*, 455 U.S. 745, 753 (1982).  However, as discussed with

18   respect to Plaintiff's First Amendment claim, Plaintiff fails to establish he had a protected liberty

19   interest in familial association because he did not have the type of parent-child relationship that is

20   entitled to such protections. *See Kirkpatrick*, 843 F.3d at 789–90.  Thus, Plaintiff fails to "even

21   arrive[] at the substantive due process threshold." *Nunez*, 147 F.3d at 874.

22          In opposition, Plaintiff additionally argues "[f]alse representations by social workers in

23   the context of juvenile dependency proceedings have been repeatedly held as a denial of

24   substantive due process as it relates to a plaintiff's right to familial association."  (ECF No. 17 at

25   21 (citing *Huk v. County of Santa Barbara*, 650 Fed. App'x. 365; *Costanich*, 627 F.3d at 1101;

26   *Hardwick v. County of Orange*, 844 F.3d 1112 (9th Cir. 2017)).)  But Plaintiff's statement, while

27   technically correct, is incorrectly applied to the instant case.

28          In *Costanich*, for example, the property and liberty interest at issue was the plaintiff's

15

foster care license. *Costanich*, 627 F.3d at 1110. The court assumed, without deciding, this was a protected property interest because the defendants had waived argument on that issue. *See id.* at 1114 n. 13, 1116 n.15. Therefore, the court proceeded to the question of whether the defendants violated the plaintiff's constitutional rights through their purported misrepresentations. *Id.*; *see also Hardwick*, 844 F.3d at 1120 (explaining *Costanich*). Here, Defendants have not waived argument on the protected property interest issue, so Plaintiff may not bypass that initial due process threshold.

The ruling in *Huk* is actually fatal to Plaintiff's claim. In *Huk*, the Ninth Circuit acknowledged there is a clearly established right "not to suffer a deprivation of liberty based on fabricated evidence and false representations in child custody proceedings." *Huk*, 650 Fed. App'x. at 366. However, after this acknowledgement, the court found there was no protected liberty interest in the continued custody of a foster child. *Id.* at 367. Therefore, the Ninth Circuit rejected the plaintiffs' procedural and substantive due process claims, stating "[e]ven if it can be established that [the plaintiffs] were deprived of their custody of their foster child through allegedly deceptive means and without any opportunity to contest the validity or reason behind the removal, they have not and [cannot] demonstrate that their custody of their foster child was a liberty interest protected by the Due Process Clause." *Id.*

*Huk* is analogous to the instant case. Like the plaintiffs in *Huk*, Plaintiff's argument is focused on the due process protection against false representations in child custody proceedings. *See id.* at 366. However, also like the plaintiffs in *Huk*, Plaintiff fails to establish that the purported misrepresentations resulted in the deprivation of a constitutionally protected liberty interest, namely, the right to familial association. *See id.* at 367. Indeed, as the Court previously determined, Plaintiff cannot establish a deprivation of that right because he was never entitled to its protections. Therefore, as the Ninth Circuit held in *Huk*, even if Plaintiff established Evans's purported misrepresentations to the juvenile dependency court deprived him of the opportunity to participate in those proceedings, Plaintiff has not and cannot establish he was deprived of any right to familial association. *See id.* Thus, Plaintiff's reliance on the aforementioned authorities is misguided and his argument is unavailing.

In short, Plaintiff seeks to bypass the determination of whether the deprivation constituted a protected liberty interest and consider only the purported wrongful actions that caused the deprivation. But he cannot. In light of the aforementioned controlling legal authority and the Court's prior analysis, Plaintiff fails to allege a violation of his substantive due process rights because he has asserted no cognizable property or liberty interest. The Court expresses skepticism as to whether Plaintiff can allege additional facts that identify some cognizable property or liberty interest in support of his due process claim; however, in an abundance of caution at this early pleading stage, the Court will grant Plaintiff an opportunity to amend. Accordingly, the Court GRANTS Defendants' Motion to Dismiss with leave to amend.

*v.        § 1983 Monell Liability*

Plaintiff alleges HSA violated his constitutional right to participate in the juvenile dependency matter and reunite with his biological daughter by failing to "properly train, supervise, retrain, monitor, or take corrective action with respect to individual employees under [its] supervision and control" regarding the "scope and importance of the [Fourteenth] Amendment based rights of familial association" and the "procedures and appropriate course of action in identifying the biological parent. . . ." (*See* ECF No. 8 ¶¶ 52–56.) Defendants argue Plaintiff has not shown any constitutional violation and where "there is no constitutional violation, the public entity cannot be liable." (ECF No. 13 at 19) (quoting *Long v. City & Cty. of Honolulu*, 511 F.3d 901, 907 (9th Cir. 2007)). Defendants further argue Plaintiff has not specified how HSA's policies and procedures are inappropriate or amount to a constitutional violation. (ECF No. 13 at 19–20.) The Court agrees.

"A municipality may not be sued under § 1983 solely because an injury was inflicted by its employees or agents." *Long*, 442 F.3d at 1185. "Instead, it is only when execution of a government's policy or custom inflicts the injury that the municipality as an entity is responsible." *Id.*; *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *see also Olvera*, 932 F. Supp. 2d at 1166.

Where a *Monell* claim is premised on a policy of omission, such as failure to train or supervise, a plaintiff must show: (1) he possessed a constitutional right of which he was deprived;

17

(2) the municipality had a policy; (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional violation. *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992); *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

"The custom or policy must be a deliberate choice to follow a course of action . . . made from various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016) (en banc) (internal citations and quotation marks omitted). It must be so "persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Put another way, the practice must have been going on for a sufficient amount of time, such that the "frequency and consistency [of] the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *see also McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000) ("A plaintiff cannot demonstrate the existence of a municipal policy or custom based solely on a single occurrence of unconstitutional action by a non-policymaking employee.")). There also must be a "direct causal link" between the policy or custom and the injury. *Anderson*, 451 F.3d at 1070 (citations omitted).

The Ninth Circuit specifically addressed the circumstances under which a *Monell* failure to train claim could be asserted:

> The first is a deficient training program, intended to apply over time to multiple employees. The continued adherence by policymakers to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action — the "deliberate indifference" — necessary to trigger municipal liability. Further, the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the "moving force" behind the plaintiff's injury.

*Long*, 442 F.3d at 1186 (citing *Bd. of Cty. Comm'rs of Byran Cty. v. Brown*, 520 U.S. 397, 407–08 (1997)).

Here, despite his broad and sweeping claims that Defendants ignored HSA polices and

18

violated Plaintiff's rights, Plaintiff does not describe or identify any actual policy that was either wrongful or wrongfully ignored by HSA employees. Therefore, the Court cannot discern any "direct causal link" between the alleged policy and Plaintiff's purported deprivation. *City of Canton*, 489 U.S. at 388. Similarly, there are no allegations suggesting Plaintiff's case amounts to anything more than a "single occurrence of unconstitutional action by a non-policymaking employee." *McDade*, 223 F.3d at 1141; *Long*, 442 F.3d at 1186. Rather, Plaintiff's claim appears to be based on the one alleged incident that happened to him. Therefore, Plaintiff fails to demonstrate his alleged injury resulted from a "permanent and well settled practice." *Id.* But perhaps most importantly, in light of the Court's ruling on Plaintiff's First Amendment and Fourteenth Amendment claims, Plaintiff fails to establish any deprivation of a constitutional right. *Anderson*, 451 F.3d at 1070.

For all these reasons, Plaintiff's *Monell* claim fails. Nonetheless, to the extent Plaintiff was granted leave to amend his due process claim, an opportunity to amend his *Monell* claim also appears warranted. Therefore, Defendants' Motion to Dismiss Plaintiff's *Monell* claim is GRANTED with leave to amend.

### D.  State Law Claims

Plaintiff asserts the following state law claims: (1) negligence against Evans and HSA (Claim 4); (2) intentional infliction of emotional distress ("IIED") against Evans (Claim 6); (3) negligent infliction of emotional distress ("NIED") against Evans (Claim 7); and (4) negligent hiring, retaining, and training against HSA (Claim 5). (ECF No. 8 at 20–24.) With respect to Plaintiff's negligence, NIED, and IIED claims, Defendants claim Evans is entitled to statutory immunity pursuant to California Government Code § 821.6 ("§ 821.6"), and that HSA is immune where Evans is immune. (ECF No. 13 at 16–19.) In opposition, Plaintiff argues an exception under California Government Code § 820.21 ("§ 820.21") renders Evans's § 821.6 immunity inapplicable. (ECF No. 17 at 22–23.) The Court will address each cause of action separately and will address the parties' immunity arguments within its analysis of each claim. *Parkes v. County of San Diego*, 345 F. Supp. 2d 1071, 1082–85 (S.D. Cal. 2004) (requiring separate analysis of each claim to determine whether any elements of § 820.21 exist).

i.      *California Government Code §§ 821.6 and 820.21*

Section 821.6 provides: "A public employee is not liable for injury caused by his instituting or prospecting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov't Code § 821.6. California courts have held that § 821.6 "provides complete immunity for social workers (and a county) for their actions taken to investigate, declare children dependents of the county, and cause their removal from parental control." *Ronald S. v. Cty. of San Diego*, 16 Cal. App. 4th 887, 899 (1993). The immunity provided by § 821.6 is broad. *See Gabrielle A. v. Cty. of Orange*, 10 Cal. App. 5th 1268, 1285 (2017), *as modified* (Apr. 18, 2017) ("Immunity applies even to 'lousy' decisions in which the worker abuses his or her discretion, including decisions based on 'woefully inadequate information.'") (citations omitted); *see also Masoud v. Cty. of San Joaquin*, No. CIV.S-06-1170 FCD EFB, 2006 WL 3251797, at *7 (E.D. Cal. Nov. 8, 2006) ("California courts have applied these immunities quite expansively to social workers, and the protection afforded by these statutes is arguably much broader than the [quasi-prosecutorial or quasi-judicial] federal immunity.").

Section 820.21, however, provides for an exception to § 821.6 immunity. More specifically, § 820.21 abrogates immunity for (1) perjury, (2) fabrication of evidence, (3) failure to disclose known exculpatory evidence, or (4) obtaining testimony by duress, fraud, or undue influence — if committed with malice. Cal. Gov't Code § 820.21(a); *see Beltran v. Santa Clara Cty.*, 514 F.3d 906, 908 (9th Cir. 2008) (holding social workers "are not entitled to absolute immunity from claims that they fabricated evidence during an investigation or made false statements in a dependency petition affidavit that they signed under penalty of perjury" and reversing dismissal of claim where "much of the information" contained in a dependency petition signed under penalty of perjury was allegedly fabricated); *but see Gabrielle A.*, 10 Cal. App. 5th at 1286 (on summary judgment, granting immunity where allegations were "heavy on speculation and light on facts" and therefore insufficient to establish malice).

Malice is defined as "conduct that is intended by the person described in subdivision (a) to cause injury to the plaintiff or despicable conduct that is carried on by the person described in

subdivision (a) with a willful and conscious disregard of the rights or safety of others." Cal. Gov't Code § 820.21(b). Thus, not only must the act fall into one of the enumerated categories, but it must also be committed with malice. *Id.* "This is a high bar to clear." *Gabrielle A.*, 10 Cal. App. 5th at 1285.

### ii.    Negligence

Plaintiff claims Evans was negligent because she breached her duty to "communicate true and accurate information" in her "reports, filings, declarations, and other documents submitted to the Juvenile Dependency Court" by "falsely representing that A.R.'s biological father was unknown" to her. (ECF No. 8 ¶¶ 63–64.) Plaintiff claims HSA is vicariously liable for Evans's negligence under Government Code § 815.2. (*Id.* at ¶ 67.) The only argument Defendants advance is for § 821.6 immunity. (ECF No. 13 at 16–18.) Defendants argue HSA is immune because Evans is also immune. (*Id.* at 19.) The Court will address Plaintiff's claims against each Defendant separately.

### a)    Evans

As an initial matter, the Court finds § 821.6's expansive application of immunity applies to Evans's actions with respect to investigating A.R.'s case and presenting information to the juvenile dependency court. *Gabrielle A.*, 10 Cal. App. 5th at 1285. Therefore, the Court turns to whether Plaintiff has sufficiently established that § 820.21 — the exception to § 821.6 immunity — applies.

Plaintiff argues § 821.6 immunity is inapplicable under § 820.21 because Evans maliciously committed perjury and/or failed to disclose known exculpatory evidence. (ECF No. 17 at 22–23.) A review of the non-conclusory, factual allegations asserted in the FAC do not appear to support Plaintiff's argument. For example, in support of his claim that Evans "knew" he was A.R.'s biological father, Plaintiff alleges: (1) the witness statements he and E.J. provided to the police in 2012 both state Plaintiff was the father of E.J.'s then unborn child (A.R.) (ECF No. 8 ¶ 20); (2) K.R. later told the juvenile dependency court at the April 3, 2013 detention hearing that he was not A.R.'s true father, and his name was not listed on the birth certificate HSA obtained (*id.* at ¶ 22); and (3) Plaintiff told Defendants that he was A.R.'s biological father

21

(*id.* at ¶ 31).  Noticeably absent from Plaintiff's allegations are facts showing Plaintiff provided Evans corroborating evidence of his claim that he was A.R.'s biological father, that Evans was present at the April 3, 2013 hearing or otherwise aware of K.R.'s statement, or that K.R.'s legally-binding declaration of paternity was revoked.  Further, other allegations — for example, that E.J. told HSA employees the potential fathers were K.R. and R.S. but did not identify Plaintiff, and that K.R. signed the declaration of paternity at A.R.'s birth subsequent to E.J.'s prior witness statement — tend to refute Plaintiff's claim that Evans knew (or should have known), with a certainty sufficient to represent under oath to the juvenile dependency court, that Plaintiff was A.R.'s biological father.

With respect to his claim that Evans intentionally withheld the "exculpatory evidence" contained in the 2012 police report from the juvenile court, Plaintiff's claim is directly contradicted by his allegation that Defendants attached the 2012 police report — with his and E.J.'s witness statements — to the petition they originally submitted to the juvenile court.  (*Id.* at ¶¶ 18–20.)  Whether Plaintiff's allegations are sufficient to show Evans committed perjury by representing to the juvenile dependency court that she did not know who A.R.'s biological father was appears to be a closer call.  In any event, Plaintiff's conclusory assertion that Evans's purported "misrepresentation" to the court "was intentional, done with malice and with conscious disregard for the rights of Plaintiff" (*id.* at ¶ 36), without more, is insufficient to trigger § 820.21. *Gabrielle A.*, 10 Cal. App. 5th at 1286.

In his opposition, Plaintiff additionally alleges Evans "refused to acknowledge the police report," "falsely represented to the juvenile dependency court that she was unaware of anyone else representing themselves to be the biological father of A.R.," that "Plaintiff had repeatedly contacted [HSA] and communicated" to Evans and others that he was A.R.'s biological father, and that Evans "purposefully failed to disclose information to the juvenile dependency court regarding Plaintiff's communications so as to make sure that A.R. was adopted out." (ECF No. 17 at 23.)  None of these allegations, however, are asserted in the FAC, and the Court cannot consider new facts provided in an opposition brief.  *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1.

Nonetheless, the Court declines to apply absolute immunity at this early stage in the litigation, where Plaintiff could possibly cure the identified deficiencies through amendment. Therefore, Defendants' Motion to Dismiss is GRANTED with leave to amend.

*b)   HSA*

In light of the Court's ruling on Plaintiff's negligence claim against Evans, Plaintiff's derivative claim against HSA fails. *See Gabrielle A.*, 10 Cal. App. 5th at 1285 (citing Cal. Gov't Code § 815.2(b) ("Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.")). However, to the extent Plaintiff was granted leave to amend his negligence claim as asserted against Evans, leave to amend the claim as asserted against HSA is also warranted. Therefore, the Court GRANTS Defendants' Motion to Dismiss with leave to amend.

*iii.   Negligent Hiring, Retaining, and Training*

Plaintiff's negligent hiring, retaining, and training claim against HSA is one of vicarious liability. (*See* ECF No. 8 ¶¶ 69–74.) Essentially, Plaintiff alleges he was harmed by Evans's actions, therefore HSA is responsible. (*Id.*) Defendants move to dismiss this claim on the basis that claims for negligent hiring, retaining, and training may not be asserted against public entities, with a single exception not applicable here.[6] (ECF No. 13 at 20–21 (citing Cal. Gov't Code § 815).)

Plaintiff provides no statutory basis for his claim. *See Hoff v. Vacaville Unified Sch. Dist.*, 19 Cal. 4th 925, 932 (1998) ("[I]n California, all government tort liability must be based on statute.") (citing Cal. Gov't Code § 815(a)). Nor has he opposed Defendants' Motion, thus conceding Defendants' arguments. Accordingly, the Court DISMISSES Plaintiff's claim against HSA for negligent hiring, retaining, and training without leave to amend.

///

---

[6]    The only time a negligent hiring, retaining, and training claim may be brought against a public entity is in the context of a lawsuit by a student against a school. *See C.A. v. William S. Hart Union High School*, 53 Cal. 4th 861 (2012).

1

*iv.    Intentional Infliction of Emotional Distress*

A claim for IIED under California law requires the plaintiff to establish "extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard [for] the probability of causing, emotional distress." *Nunes v. Cty. of Stanislaus*, No. 1:17-cv-00633-DAD-SAB, 2017 WL 3670926, at *16 (E.D. Cal. Aug. 25, 2017) (quoting *Ravel v. Hewlett-Packard Enter., Inc.*, 228 F. Supp. 3d 1086, 1099 (E.D. Cal. 2017)).  To amount to extreme and outrageous conduct, the actions "must be so extreme as to exceed all bounds that are usually tolerated in a civilized community."  *Id.* (quoting *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (1998)); *see Hamilton v. Prudential Fin.*, No. 2:07-cv-00944-MCE-DAD, 2007 WL 2827792, at *3 (E.D. Cal. Sept. 27, 2007) ("On the spectrum of offensiveness, outrageous conduct is the most extreme or severe form of offensiveness, and anything less is without legal recourse.") (citation omitted).

Plaintiff claims Evans is liable for IIED because she intended to cause Plaintiff's emotional distress through her "outrageous conduct" and "Plaintiff must now live without any legal right to associate with, contact, or otherwise interact with his daughter." (ECF No. 8 ¶¶ 76–78.) This claim appears to be based on the same allegations that supported Plaintiff's negligence claim.  Defendants again assert immunity under § 821.6, which Plaintiff disputes based on § 820.21.  (ECF No. 13 at 16–18; ECF No. 17 at 22–23.)  Defendants additionally argue the allegations are insufficient to state an IIED claim, which Plaintiff does not substantively address. (ECF No. 13 at 21; *see also* ECF No. 17 at 8 (in the introduction of his opposition, Plaintiff only states he has properly asserted his "related state law claims.").)

For the same reasons discussed with respect to Plaintiff's negligence claim, § 821.6 applies and the allegations do not support an application of § 820.21.  On the merits, the same lack of factual allegations that preclude a finding of "malice" under § 820.21 are also fatal to the intent element of Plaintiff's IIED claim.  Moreover, the Court is not persuaded Plaintiff has established the causation or extreme and outrageous elements of the claim based on the

///

///

24

aforementioned factual allegations.[7]  *See Schlauch v. Hartford Accident & Indem. Co.*, 146 Cal. App. 3d 926 (1983) (in bad-faith claim against insurer who delayed payment of policy limits for third-party claim with undisputed liability for 2.5 years, finding mere assertion that defendant "acted outrageously and with intent to inflict emotional distress" by failing to accept settlement offer and violating statutory duties under Cal. Ins. Code "does not in itself constitute the type of outrageous conduct which will support" an IIED claim).

However, for the same reasons previously discussed, permitting Plaintiff an opportunity to cure the identified deficiencies through amendment appears warranted.  Therefore, Defendants' Motion to Dismiss is GRANTED with leave to amend.

*v.      Negligent Infliction of Emotional Distress*

Plaintiff argues Evans's negligence in misrepresenting information related to A.R.'s biological father caused Plaintiff to suffer "severe emotional distress, anxiety[,] and general damage to [his] psyche."  (ECF No. 8 ¶ 82.)  This claim appears to be based on the same allegations that supported Plaintiff's negligence and IIED claims.

Defendants again assert immunity under § 821.6, which Plaintiff disputes based on § 820.21.  (ECF No. 13 at 16–18; ECF No. 17 at 22–23.)  Defendants additionally argue Plaintiff's NIED claim is inapplicable as a matter of law, which Plaintiff does not dispute.  (ECF No. 13 at 21.)  Plaintiff again fails to rebut a finding of § 821.6 immunity through § 820.21, for the reasons previously discussed.  Plaintiff also fails to state a claim for NIED as a matter of law.

"Where there is a claim for the 'negligent infliction of emotional distress,' the plaintiff must be either a 'direct victim' of the wrongful conduct, or, with certain qualifications, a bystander[] (i.e., 'percipient witness to the injury of another')."  *Smith v. Pust*, 19 Cal. App. 4th 263, 273 (1993) (citations omitted).  As Defendants discuss in their Motion, a "direct victim" claim arises only in three scenarios: (1) mishandling of corpses, (2) misdiagnosis of a disease, and

---

[7]      However, Plaintiff sufficiently alleges the "severe or extreme emotional distress" element of the claim based on his allegation that he suffered "severe emotional distress, anxiety and general damage to his psyche, to such an extent as to cause physical manifestations of pain" from his inability to connect with his biological daughter. (ECF No. 8 ¶ 35); *see Hamilton*, 2007 WL 2827792, at *4.

(3) breach of a duty from a preexisting relationship.  (ECF No. 13 at 21 (citing *Christensen v. Superior Court*, 54 Cal. 3d 868, 879 (1991); *Molien v. Kaiser Found. Hosps.*, 27 Cal. 3d 916, 923 (1980); *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1076 (1992)).)  Plaintiff does not allege any of these scenarios in his FAC, so by default, the Court presumes he is raising a bystander claim.

A bystander claim requires that the bystander: "(1) is closely related to the injury victim; (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress — a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances."  *Thing v. La Chusa*, 48 Cal. 3d 644, 667–68 (1989).

Plaintiff cannot satisfy the second prong of the test because he was not present at the injury-producing event.  Namely, he never attended or participated in any of the court proceedings that resulted in the termination of his potential parental rights.  *Id.*  Plaintiff does not propose any facts he could allege to cure this defect, nor can the Court imagine any.  Nor does Plaintiff address Defendants' argument in his opposition.  Therefore, the Court DISMISSES Plaintiff's NIED claim without leave to amend.

## IV.   CONCLUSION

For the foregoing reasons, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss (ECF No. 13) as follows:

1.  Defendants' Motion to Dismiss the action based on Federal Rule of Civil Procedure 4(m) is DENIED;

2.  Defendants' Motion to Dismiss Plaintiff's claims against Saga-Matsumoto is GRANTED and Saga-Matsumoto is DISMISSED without prejudice;

3.  Defendants' Motion to Dismiss Plaintiff's claim for First Amendment interference with familial association (Claim 1) is GRANTED without leave to amend;

4.  Defendants' Motion to Dismiss Plaintiff's claim for violations of procedural and substantive due process under the Fourteenth Amendment (Claim 2) is GRANTED with leave to amend;

5.  Defendants' Motion to Dismiss Plaintiff's claim for § 1983 *Monell* liability (Claim 3)

is GRANTED with leave to amend;

6. Defendants' Motion to Dismiss Plaintiff's negligence claim (Claim 4) is GRANTED with leave to amend as asserted against both Evans and HSA;

7. Defendants' Motion to Dismiss Plaintiff's claim for negligent hiring, retaining, and training (Claim 5) is GRANTED without leave to amend;

8. Defendants' Motion to Dismiss Plaintiff's claim for intentional infliction of emotional distress (Claim 6) is GRANTED with leave to amend; and

9. Defendants' Motion to Dismiss Plaintiff's claim for negligent infliction of emotional distress (Claim 7) is GRANTED without leave to amend.

Plaintiff may file an amended complaint not later than 30 days from the date of electronic filing of this Order. Defendants' responsive pleading is due 21 days after Plaintiff files an amended complaint.

IT IS SO ORDERED.

DATED: March 31, 2021

Troy L. Nunley
United States District Judge