1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                          EASTERN DISTRICT OF CALIFORNIA

9

10

VICTOR RODRIGUEZ, an individual,

11                                                  No. 2:16-cv-00770-TLN-JDP

              Plaintiff,

12

       v.

13                                                  **ORDER**

COUNTY OF SAN JOAQUIN by and
14   through the SAN JOAQUIN COUNTY
     HUMAN SERVICES AGENCY;
15   STEPHANIE EVANS, an individual;
     LYNN K. SAGA-MATSUMOTO, an
16   individual, and DOES 1 through 9,

17              Defendants.

18

19         This matter is before the Court pursuant to a Motion to Strike (ECF No. 27) and a Motion

20   to Dismiss (ECF No. 28) brought by Defendants County of San Joaquin through San Joaquin

21   County Human Services Agency ("HSA"), Stephanie Evans ("Evans"), and Lynn K. Saga-

22   Matsumoto ("Saga-Matsumoto") (collectively, "Defendants").  Plaintiff Victor Rodriguez

23   ("Plaintiff") opposed both motions.  (ECF Nos. 29, 30.)  Defendants filed replies.  (ECF Nos. 32,

24   33.)

25         In considering Defendants' Motion to Strike and Motion to Dismiss, the Court also

26   reviewed again the First Amended Complaint ("FAC") (ECF No. 8) and the papers filed in

27   connection with Defendants' first motion to dismiss ("First Motion to Dismiss") (ECF Nos. 13,

28

                                              1

17, 20).  Upon careful review, the Court REVERSES its previous order dated March 31, 2021, (ECF No. 25), and DENIES Defendants' First Motion to Dismiss (ECF No. 13) solely with respect to Plaintiff's first cause of action for First Amendment interference with familial relations.

Having carefully considered the briefing filed by both parties and for the reasons set forth below, Defendants' Motion to Strike (ECF No. 27) is hereby GRANTED in part and DENIED in part, and Defendants' Motion to Dismiss (ECF No. 28) is hereby GRANTED in part and DENIED in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff's claims arise from the investigation, court hearings, and resolution of a juvenile dependency proceeding for minor, A.R.  (ECF No. 26 at ¶¶ 14–30.)  Plaintiff asserts A.R. is his biological daughter, but Defendants prevented him from uniting with her by withholding information from the juvenile dependency court.  (*Id.* at ¶14.)

A.R. was born on April 27, 2012. (*Id.* at ¶ 15.)  In April 2012, A.R. was the subject of a Voluntary Family Maintenance agreement.  HSA employees interviewed A.R.'s mother, E.J., about the identity of A.R.'s father.  (*Id.* at 16.)  E.J. informed HSA employees that another man, K.R., was listed on A.R.'s birth certificate but E.J. "was not certain that he was the biological father."  (*Id.*)  K.R. and E.J. were never married, but had three older children in common, who were in K.R.'s custody.  (*Id.*)  HSA employees interviewed K.R., who acknowledged he was in fact listed on A.R.'s birth certificate, but he had previously taken a DNA test and discovered he was not the biological father.  (*Id.*)  K.R. "'walked away' and was working on having his name removed from her birth certificate because he did not want to pay child support as A.R. was proven to not be his child."  (*Id.*)

On March 28, 2013, E.J. was arrested for child cruelty and public intoxication.  (*Id.* at ¶ 15.)  On April 2, 2013, HSA filed a petition on behalf of A.R. to institute juvenile dependency proceedings.  (*See id.* at ¶¶ 18–19.)  Defendants submitted numerous reports to the juvenile dependency court which detailed E.J.'s extensive criminal history involving alcohol abuse, child

---

[1]    The following recitation of facts is taken, sometimes verbatim, from Plaintiff's Second Amended Complaint.  (ECF No. 26.)

endangerment, and her history with child protective services.  (*Id.* at ¶ 19.)  The petition included a police report, which detailed an altercation that occurred on January 2, 2012[2] (the "Police Report").  (*Id.* at ¶ 20.)  The Police Report indicated E.J. had been drinking with Plaintiff when an altercation ensued and E.J. attacked Plaintiff.  (*Id.*)  Witness statements from both Plaintiff and E.J. acknowledge that E.J. was five-months pregnant with Plaintiff's child.  (*Id.*)  A jurisdiction report submitted by Defendants identified Plaintiff as a potential witness for the juvenile dependency proceedings.  (*Id.*)

At some time during 2013, Plaintiff contacted HSA and sought out the social worker on the case — Evans.  (*Id.* at 31.)  Plaintiff informed Defendants he was the witness "V.R." from the July 2012 Police Report, which allegedly "acknowledged" him as A.R.'s biological father.  (*Id.*)  He also requested a DNA test to prove his relationship to A.R., but Defendants declined to make A.R. available for the testing.  (*Id.* at ¶ 20, 32.)  Plaintiff alleges that "[t]hroughout this same time period," he continuously sought out E.J. and A.R. by contacting known relatives.  (*Id.* at ¶ 31.)  The relatives refused to provide the location of E.J. and A.R.  (*Id.*)

At a detention hearing on April 3, 2013, K.R. appeared and told the juvenile dependency court he was not A.R.'s true father.  (*Id.* at ¶ 22.)  HSA obtained a copy of A.R.'s birth certificate and found there was no father listed.  (*Id.*)  K.R. never appeared in the juvenile dependency hearings again.  (*Id.*)

At a jurisdiction hearing on April 15, 2013, the juvenile dependency court proceeded in K.R.'s absence and relied upon the signed Declaration of Paternity to declare K.R. to be A.R.'s presumed father.  (*See id.* at ¶¶ 22–23.)

The juvenile dependency court scheduled a hearing pursuant to California Welfare and Institutions Code § 366.26 ("§ 366.26") for June 4, 2014.[3]  (*Id.*¶ 27.)  In preparation for this

---

[2]     The FAC appears to contradict itself and says that the incident occurred on July 26, 2012 (*after* the birth of A.R.), *and* that the incident occurred on January 2, 2012.  (*Id.* ¶ 20.)  However, the Court interprets this as the incident occurred on January 2, 2012, and the Police Report was filed in July 2012.

[3]     A § 366.26 hearing is a hearing to terminate the parental rights or establish guardianship of children adjudged dependent children of court.  Cal. Welf. & Inst. Code § 366.26.

hearing, Evans prepared a declaration stating A.R.'s biological father remained unknown. (*Id.* at ¶ 24–25.) Evans had access to the July 2012 Police Report which included witness statements acknowledging that E.J. was five months pregnant with Plaintiff's child. (*Id.*) She attached the Police Report to the juvenile court petition but did not disclose the information in her declaration. (*Id.* at ¶ 25(d).) Relying on Evans' declaration that A.R.'s father was unknown, the court gave Evans permission to publish a citation in the local newspaper, The Record, to provide notice to any potential fathers to appear for the hearing. (*Id.*) The newspaper published the notice for four consecutive weeks, but no potential father came forward. (*See id.* at ¶ 25(e).)

The § 366.26 hearing was held on February 6, 2015. (*Id.* at ¶ 29.) On or about April 24, 2015, Plaintiff learned A.R. was in foster care. (*Id.*) Plaintiff drove to the Child Protective Services ("CPS") office to speak with a social worker, but Evans was not available. (*Id.*) While at the CPS office, Plaintiff spoke with Ms. Beverly Louis ("Louis") and confirmed Plaintiff was the individual who filed the 2012 Police Report, which acknowledged that E.J. was five months pregnant with Plaintiff's child. (*Id.*) Louis advised Plaintiff that Evans would contact Plaintiff the next morning. (*Id.*) However, Evans never contacted Plaintiff. (*Id.*) Plaintiff called Evans on April 27, 2015, and Evans advised Plaintiff he would need to pay for his own DNA test, which he agreed to do. (*Id.*) On May 13, 2015, Plaintiff provided a swab test to the lab for testing, but Defendants refused to make A.R. available for DNA testing. (*Id.*)

On June 15, 2015, the juvenile dependency court terminated the parental rights of all unknown fathers. (*See id.* at ¶ 29(a).) Plaintiff alleges Defendants never attempted to contact him prior to the § 366.26 hearing, despite having the July 2012 Police Report with Plaintiff and E.J.'s statements that Plaintiff was A.R.'s biological father. (*See id.* at ¶¶ 20, 29(a).) He further alleges Defendants withheld this information from the juvenile dependency court and Evans instead misrepresented to the court that K.R. was A.R.'s biological father. (*See id.* at ¶¶ 20, 27 (Evans requested to provide notice of the § 366.26 hearing to K.R.), 33.) As a result, Plaintiff contends he did not receive proper notice for any hearings related to A.R.'s juvenile dependency proceedings. (*Id.* at ¶ 34.)

On July 29, 2015, Plaintiff filed a petition with the juvenile dependency court and

1  requested the court vacate all orders made regarding A.R.'s father.  (*Id*. at ¶ 34.)  Defendants

2  opposed the petition on the basis that the rights of any potential fathers had been terminated.  (*Id*.)

3  The juvenile dependency court denied Plaintiff's petition.  (ECF No. 14 at 5–6.)  Plaintiff

4  appealed the decision, and the appellate court affirmed the denial.  (*Id.* at 4–8.)

5          Plaintiff initiated this action on April 14, 2016.  (ECF No. 1; ECF No. 13 at 3.)  On

6  January 6, 2017, Plaintiff filed the FAC asserting seven causes of action against Defendants, for

7  the following violations of Plaintiff's constitutional rights under 42 U.S.C. § 1983 ("§ 1983") and

8  violations of state law: (1) First Amendment interference with familial relations against Evans

9  and Saga-Matsumoto; (2) Fourteenth Amendment due process violations against Evans and Saga-

10  Matsumoto; (3) *Monell* liability against HSA; (4) negligence against all Defendants; (5) negligent

11  hiring, retaining, and training against HSA; and (6) intentional infliction of emotional distress

12  ("IIED") against Evans and HSA; and (7) negligent infliction of emotional distress ("NIED")

13  against Evans and Saga-Matsumoto.  (*See* ECF No. 8.)

14          On September 6, 2017, Defendants filed the First Motion to Dismiss pursuant to Federal

15  Rule of Civil Procedure ("Rule") 12(b)(6).  (ECF No. 13.)  On March 31, 2021, the Court issued

16  an Order granting the motion to dismiss as to all causes of action.  (ECF No. 25.)  The first, fifth,

17  and seventh causes of action were dismissed without leave to amend.  (*Id.* 26–27.)

18          On April 30, 2021, Plaintiff filed the operative Second Amended Complaint ("SAC")

19  asserting the identical seven causes of action as were asserted in the FAC.  (ECF No. 26.)  On

20  May 21, 2021, Defendants filed the instant Motion to Strike pursuant to Rule 12(f), and the

21  concurrently filed the Motion to Dismiss pursuant to Rule 12(b)(6).  (ECF Nos. 27, 28.)

22  Defendants move to strike all references to the already dismissed Saga-Matsumoto and the

23  "already dismissed without leave-to-amend first, fifth, and seventh causes of action," arguing

24  Plaintiff exceeded the leave granted to him in the Court's previous Order.  (ECF No. 27 at 5.)

25  Defendants concurrently move to dismiss all causes of action arguing: (1) the Court already

26  dismissed Plaintiff's first, fifth, and seventh causes of action without leave to amend; (2) the

27  Court should dismiss Plaintiff's first, second, fourth, and seventh claims against Saga-Matsumoto

28  because the Court already dismissed her; (3) Defendants are entitled to qualified immunity; and

1    (4) Plaintiff's claims against HSA fail to allege an unconstitutional policy or practice to show the

2    County of San Joaquin is responsible for Plaintiff's harm.  (ECF No. 28 at 16–26.)

3         **II.    STANDARD OF LAW**

4              A. <u>Motion to Strike</u>

5         Rule 12(f) provides that a court "may strike from a pleading an insufficient defense or any

6    redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A court will

7    only consider striking a defense or allegation if it fits within one of these five categories.  *Yursik*

8    *v. Inland Crop Dusters Inc.*, No. CV-F-11-01602-LJO-JLT, 2011 WL 5592888, at *3 (E.D. Cal.

9    Nov. 16, 2011) (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–74 (9th Cir.

10   2010)).  "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money

11   that must arise from litigating spurious issues by dispensing with those issues prior to trial."

12   *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  However, Rule 12(f)

13   motions are "generally regarded with disfavor because of the limited importance of pleading in

14   federal practice, and because they are often used as a delaying tactic."  *Neilson v. Union Bank of*

15   *Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003).

16        "Ultimately, whether to grant a motion to strike lies within the sound discretion of the

17   district court."  *Id.*  Unless it would prejudice the opposing party, courts freely grant leave to

18   amend stricken pleadings.  *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 826 (9th Cir. 1979); *see also*

19   Fed. R. Civ. P. 15(a)(2).  If the court is in doubt as to whether the challenged matter may raise an

20   issue of fact or law, the motion to strike should be denied, leaving the assessment of the

21   sufficiency of the allegations for adjudication on the merits after proper development of the

22   factual nature of the claims through discovery.  *See generally Whittlestone*, 618 F.3d at 974–75.

23        Where a defendant seeks to challenge the sufficiency of factual allegations in a complaint,

24   it must do so through a Rule 12(b)(6) motion, not a Rule 12(f) motion.  *Kelley v. Corr. Corp. of*

25   *Am.*, 750 F. Supp. 2d 1132, 1146 (E.D. Cal. 2010) (citing *Consumer Solutions REO, LLC v.*

26   *Hillery*, 658 F. Supp. 2d 1002, 1020 (N.D. Cal. 2009)).  "[W]here a motion is in substance a Rule

27   12(b)(6) motion, but is incorrectly denominated as a Rule 12(f) motion, a court may convert the

28   improperly designated 12(f) motion into a Rule 12(b)(6) motion."  *Id.* (citing *Consumer*

1    *Solutions*, 658 F. Supp. 2d at 1021).

2                    B.  Motion to Dismiss

3          A motion to dismiss for failure to state a claim upon which relief can be granted under

4    Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th

5    Cir. 2001).  Rule 8(a) requires that a pleading contain "a short and plain statement of the claim

6    showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556

7    U.S. 662, 677–78 (2009).  Under notice pleading in federal court, the complaint must "give the

8    defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic*

9    *v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).  "This simplified

10   notice pleading standard relies on liberal discovery rules and summary judgment motions to

11   define disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema*

12   *N.A.*, 534 U.S. 506, 512 (2002).

13         On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

14   *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give the plaintiff the benefit of every

15   reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

16   *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

17   "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

18   relief."  *Twombly*, 550 U.S. at 570 (internal citation omitted).

19         Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

20   factual allegations."  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

21   While Rule 8(a) does not require detailed factual allegations, "it demands more than an

22   unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A

23   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

24   elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

25   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

26   statements, do not suffice.").  Thus, "[c]onclusory allegations of law and unwarranted inferences

27   are insufficient to defeat a motion to dismiss" for failure to state a claim.  *Adams v. Johnson*, 355,

28   F.3d 1179, 1183 (9th Cir. 2004) (citations omitted).  Moreover, it is inappropriate to assume the

                                                     7

1  plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws

2  in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State*

3  *Council of Carpenters*, 459 U.S. 519, 526 (1983).

4          Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

5  facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim

6  has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

7  reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

8  680. While the plausibility requirement is not akin to a probability requirement, it demands more

9  than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility

10  inquiry is "a context-specific task that requires the reviewing court to draw on its judicial

11  experience and common sense." *Id.* at 679. Thus, only where a plaintiff fails to "nudge [his or

12  her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly

13  dismissed. *Id.* at 680 (internal quotations omitted).

14          In ruling on a motion to dismiss, a court may consider only the complaint, any exhibits

15  thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.

16  *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v.*

17  *Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998); *see also Daniels-*

18  *Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (the court need not accept as true

19  allegations that contradict matters properly subject to judicial notice).

20          If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

21  amend even if no request to amend the pleading was made, unless it determines that the pleading

22  could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

23  1130 (9th Cir. 2000) (en banc) (quoting *Doe v. U.S.*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also*

24  *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying

25  leave to amend when amendment would be futile. Although a district court should freely give

26  leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such

27  leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]"

28  *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting

1   *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

2   **III.   ANALYSIS**

3       The Court will first discuss the reversal and denial of Defendants' First Motion to Dismiss

4   (ECF No. 13) as to Plaintiff's first cause of action for First Amendment interference with familial

5   relations.  The Court will then analyze Defendants' Motion to Strike (ECF No. 27) and finally

6   evaluate Defendants' Motion to Dismiss (ECF No. 28).

7           A.   Reversal of Claim One (Defendant's First Motion to Dismiss)

8       District courts retain inherent authority to revise interim or interlocutory orders any time

9   before entry of judgment.  *See, e.g.*, *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996) ("the

10  interlocutory orders and rulings made pre-trial by a district judge are subject to modification by

11  the district judge at any time prior to final judgment") (citation omitted); *Balla v. Idaho State Bd.*

12  *of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989); Fed. R. Civ. P. 54(b).  A district court may

13  reconsider and reverse a previous interlocutory decision for any reason it deems sufficient, even

14  in the absence of new evidence or an intervening change in or clarification of controlling law.

15  *Washington v. Garcia*, 977 F. Supp. 1067, 1068–69 (S.D. Cal. 1997); *Sport Squeeze Inc. v. Pro-*

16  *Innovative Concepts Inc.*, No. 97-CV-115 TW (JFS), 1999 WL 696009, at *9 (S.D. Cal. June 24,

17  1999).  But a court should generally leave a previous decision undisturbed absent a showing that

18  it either represented clear error or would work a manifest injustice.  *Christianson v. Colt Indus.*

19  *Operating Corp.*, 486 U.S. 800, 817 (1988).

20      In considering Defendants' instant Motion to Strike (ECF No. 27) and Second Motion to

21  Dismiss (ECF No. 28), the Court also reviewed Plaintiff's FAC (ECF No. 8) and the papers filed

22  in connection with the Defendants' First Motion to Dismiss (ECF Nos. 13, 17, 20).  Having

23  carefully considered the issues presented, the Court finds its prior order granting dismissal

24  without leave to amend as to Plaintiff's cause of action for First Amendment interference with

25  familial relations is clearly erroneous and would work a manifest injustice.

26      The Court erroneously relied on cases discussing claims of Fourteenth Amendment

27  interference with familial relations in the analysis of Plaintiff's First Amendment claim of

28  interference with familial relations.  (ECF No. 25 at 11–12) (citing *Kirkpatrick v. Cnty. of*

9

*Washoe*, 843 F.3d 784 (9th Cir. 2016); *Lehr v. Robertson*, 463 U.S. 248 (1983); *Olvera v. Cnty. of Sacramento*, 932 F. Supp. 2d 1123 (E.D. Cal. 2013)).  Upon reconsideration, it is not clear to the Court that the First and Fourteenth Amendment protections for familial association are equivalent.  *See Keates v. Koile*, 883 F.3d 1228, 1235–36 (9th Cir. 2018).  When stripped of cases referencing the Fourteenth Amendment, Defendants' motion to dismiss fails to persuade the Court on the issue of Plaintiff's *First Amendment* claim.  At this early stage in the litigation, accepting the Plaintiff's factual allegations in the FAC as true, and resolving all reasonable inferences in favor of Plaintiff, the Court reconsiders its previous order and finds that Plaintiff sufficiently states a claim for First Amendment interference with familial relations.  *Cruz*, 405 U.S. at 322; *see also Retail Clerks Int'l Ass'n*, 373 U.S. at 753 n.6.  The Court finds that whether the Plaintiff can ultimately prevail on the merits of the claim is a matter properly determined on the basis of proof, which means on a summary judgment motion or at trial by the judge or a jury, and not merely on the face of the pleadings.  *See Twombly*, 550 U.S. at 556.  The Court retains the inherent authority "to reverse an interlocutory order for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of controlling law. *Washington*, 977 F. Supp. at 1069.  Accordingly, the Court exercises this inherent authority and DENIES Defendants' First Motion to Dismiss (ECF No. 13) as to Plaintiff's cause of action for First Amendment interference with familial relations (Claim One) reversing its prior Order.  (ECF No. 25.)

### B.   Motion to Strike

The Court's March 31, 2021 Order dismissed Plaintiff's claims: (1) denying leave to amend for Plaintiff's first cause of action for First Amendment interference with familial relations against Evans and Saga-Matsumoto; (2) granting leave to amend for Plaintiff's fifth cause of action for negligent hiring, retaining, and training against HSA; and (3) denying leave to amend for Plaintiff's seventh cause of action for negligent infliction of emotional distress against Evans and Saga-Matsumoto.  (*See* ECF No. 25 at 26–27.)  Additionally, the Order dismissed all claims against Saga-Matsumoto without prejudice, however the Order included a specific instruction allowing Plaintiff to later bring claims against Saga-Matsumoto through a Rule 15 motion.  (*Id.* at

10

1   8–9.)

2       Defendants move to strike all claims asserted against Saga-Matsumoto and Plaintiff's

3   first, fifth, and seventh causes of action, arguing that Plaintiff is flagrantly disobeying a Court

4   order and improperly including dismissed claims and parties in his SAC.  (*See* ECF No. 27 at 3.)

5   In opposition, Plaintiff argues a Rule 12(f) motion "is neither an authorized nor a proper way to

6   procure the dismissal of all or part of a complaint."  (ECF No. 29 at 24 (citing *Yamamoto v.*

7   *Omiya*, 564 F.2d 1327 (9th Cir. 1977) (Hufstedler, J., concurring in part and dissenting in part)).)

8   Plaintiff also argues a Rule 12(f) motion is not appropriate to dismiss all or part of a complaint

9   because it is subject to a different standard of review than a Rule 12(b)(6) motion to dismiss.

10  (ECF No. 29 at 25.)  However, the Court finds Plaintiff's arguments are unavailing as the

11  disputed allegations were already addressed in the First Motion to Dismiss.  (ECF No. 13.)

12  Plaintiff's allegations are therefore redundant, immaterial and/or impertinent, and they violate this

13  Court's March 31, 2021 Order.  (*See* ECF No. 25.)

14      Under Rule 15, a party may amend his or her pleading "once as a matter of course [and] . .

15  . in all other cases, a party may amend its pleading only with the court's leave.  The court should

16  freely give leave when justice so requires."  Fed. R. Civ. P. 15(a).  District courts in this circuit

17  generally allow plaintiffs to add new claims and/or parties to an amended complaint where a prior

18  order of dismissal granted leave to amend without limitation.  *Jameson Beach Prop. Owners*

19  *Ass'n v. U.S.*, No. 2:13-cv-01025-MCE-AC, 2014 WL 4925253, at *3 (E.D. Cal. Sept. 29, 2014)

20  (citing *Katz v. Cal-W. Reconveyance Corp.*, 09-CV-04866-LHK, 2010 WL 3768049 (N.D. Cal.

21  Sept. 21, 2010)).  On the other hand, where a prior court order granted limited leave to amend,

22  district courts in this circuit generally strike new claims or parties contained in an amended

23  complaint when the plaintiff did not seek leave to amend.  *See, e.g.*, *Benton v. Baker Hughes*, CV

24  12-07735 MMM, 2013 WL 3353636 (C.D. Cal. June 30, 2013); *Crane v. Yarborough*, CV 05-

25  8534 DSF (JC), 2012 WL 1067956 (C.D. Cal. Mar. 29, 2012).  Thus, whether a district court will

26  accept new claims and/or parties in an amended complaint after a motion to dismiss will depend

27  on whether the plaintiff was granted leave to amend with or without limitation.  *Urista v. Bank of*

28  *Am., N.A.*, No. C11-03097 HRL, 2012 WL 10596, at *6 (N.D. Cal. Jan. 3, 2012).  In such cases,

1    courts look at the specific language of the prior order to determine whether leave to amend was

2    granted without limitation.  *See, e.g.*, *Gilmore v. Union Pacific R. Co.*, No. 09-CV-02180, 2010

3    WL 2089346, at *4 (E.D. Cal. May 21, 2010) (allowing plaintiff to add new claims without

4    having asked leave because court had granted leave to amend without limitation and defendants

5    would not be prejudiced); *DeLeon et al. v. Wells Fargo Bank et al.*, No. 10-CV-01390, 2010 WL

6    4285006, at *8–9, (N.D. Cal. Oct. 22, 2010) (finding the plaintiff was required to seek leave to

7    amend to add new claims when prior dismissal specified only limited amendment had been

8    granted).

9        When the language of an order clearly states that a plaintiff may only amend to address

10   certain deficiencies identified in the order, courts have held that a plaintiff is barred from adding

11   new claims or parties.  In *DeLeon v. Wells Fargo Bank, N.A.*, the court similarly found that the

12   plaintiff was not allowed to add new claims to the complaint when its previous order dismissed

13   six claims without leave to amend and granted leave to amend with respect to certain claims to

14   give the plaintiff an opportunity to allege more facts.  No. 10-CV-01390-LHK, 2010 WL

15   4285006, *3 (N.D. Cal. Oct. 22, 2010).

16       In this Court's previous Order, the Court dismissed all claims against Saga-Matsumoto,

17   stating "if Plaintiff wishes to bring claims against Saga-Matsumoto at a later date, he may file a

18   motion to do so pursuant to Rule 15."  (ECF No. 25 at 8–9.)  The Court was specific about the

19   purpose of the limited leave granted, as opposed to granting leave to amend without limitation.

20   The same Order dismissed Plaintiff's first, fifth, and seventh causes of action "without leave to

21   amend."  (*Id.* at 26–27.)  This is a specific instruction and limitation by the court, barring

22   Plaintiff from re-alleging the first, fifth, and seventh causes of action.  Plaintiff failed to comply

23   with the clear instructions of the March 31, 2021 Order.  (*See id.*)  For that reason, the Court

24   GRANTS Defendants' Motion to Strike and STRIKES Plaintiff's fifth, and seventh causes of

25   action in their entirety from the SAC.  (ECF No. 26 at 33–34, 36–37.)  The Court further

26   STRIKES all references to Saga-Matsumoto as contained in paragraphs 10, 40, 53, 56, 63, 67, 69

27   through 74, 80, and 84, and as a named Defendant in the first, second, fourth, and seventh claims

28   for relief in Plaintiff's SAC.  (ECF No. 26)  The Court repeats the instruction from the previous

1    Order, "[i]f Plaintiff wishes to bring claims against Saga-Matsumoto at a later date, he may file a

2    motion to do so pursuant to Rule 15."  (ECF No. 25 at 8–9.)  As discussed previously, Plaintiff's

3    First Amendment claim for familial association was erroneously dismissed, and the Court

4    declines to strike this cause of action with respect to Evans.

5          The Court reminds the parties that, in accordance with Local Rule 110, failure to comply

6    with any order of the Court may be grounds for imposition of any and all sanctions authorized by

7    statute or Rule or within the inherent power of the Court.  E.D. Cal. L.R. 110; *see also* Fed. R.

8    Civ. P. 11.

9                    C.      Second Motion to Dismiss: Federal Claims

10         Plaintiff asserts two federal claims under § 1983: (1) Fourteenth Amendment procedural

11   and substantive due process violations against Evans (Claim Two); and (2) *Monell* liability

12   against HSA (Claim Three).  (ECF No. 26 at 21–31.)  Defendants move to dismiss the procedural

13   and substantive due process claims for failure to adequately allege a constitutional deprivation

14   and because Evans is entitled to qualified immunity.  (ECF No. 28 at 17–21.)  They seek

15   dismissal of the *Monell* claim for failure to allege a constitutional deprivation and failure to allege

16   any actual policy "that was either wrongful or [was] wrongfully ignored by HSA employees."

17   (*Id.* at 24–25.)  The Court will address each claim in turn.

18                    i.      *Fourteenth Amendment Due Process*

19         Plaintiff asserts a claim for procedural and substantive due process violations under the

20   Fourteenth Amendment against Evans.  (ECF No. 26 at 21.)  Courts have characterized the

21   Fourteenth Amendment right to familial association as having both a substantive and a procedural

22   component.  *See Keates*, 883 F.3d at 1236.  While the right is a fundamental liberty interest, *see,*

23   *e.g.*, *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1079 (9th Cir. 2011); *Smith v. City of Fontana*,

24   818 F.2d 1411, 1418 (9th Cir. 1987), *overruled on other grounds by Hodgers–Durgin v. De La*

25   *Vina*, 199 F.3d 1037 (9th Cir. 1999) (en banc), officials may interfere with the right if they

26   "provide the parents with fundamentally fair procedures."  *Santosky v. Kramer*, 455 U.S. 745, 754

27   (1982).  The Court will address now address the parties arguments as to the substantive and

28   procedural components of the Fourteenth Amendment right to familial association.

                                                        13

1          *a)  Substantive*

2          Defendants argue Plaintiff's substantive due process claim fails for all the reasons set

3    forth in this Court's previous Order.  (ECF No. 28 at 17.)  Defendants argue Plaintiff's

4    substantive due process claim "is rooted solely in his alleged right to familial association" and

5    this Court already found Plaintiff "has not and cannot establish that he was deprived of any right

6    to familial association."  (*Id.* (quoting ECF No. 25 at 16).)  In opposition, Plaintiff contends the

7    SAC adequately alleges a violation of Plaintiff's right to be free from "judicial deception."  (ECF

8    No. 30 at 20–21.)  Plaintiff alleges Evans "committed judicial deception when she declared that

9    A.R.'s father is unknown; when she obtained the court order for publication stating that K.R. was

10   the father[,] which the court adopted[,] and when she prevented plaintiff from obtaining A.R.'s

11   DNA sample which would have proven plaintiff's paternity."  (ECF No. 26 at 24.)  In reply,

12   Defendants argue Plaintiff's allegation that Evans failed to read a police report in her possession

13   does not rise to the level of "deliberate" or with "reckless disregard" as required to state a claim

14   for an unconstitutional violation of the right to be free from judicial deception.  (ECF No. 33 at 6–

15   7.)

16         "To establish a substantive due process claim, a plaintiff must, as a threshold matter, show

17   a government deprivation of life, liberty, or property."  *Nunez v. City of L.A.*, 147 F.3d 867, 871

18   (9th Cir. 1998).  "To violate substantive due process, the alleged deprivation must 'shock the

19   conscience' and 'offend the community's sense of fair play and decency.'"  *Marsh v. Cnty. of San*

20   *Diego*, 680 F.3d 1148, 1154 (9th Cir. 2012) (citation omitted).  "Where, as here, circumstances

21   afford reasonable time for deliberation before acting, we consider conduct to be conscience-

22   shocking if it was taken with deliberate indifference toward a plaintiff's constitutional rights."

23   *Sylvia Landfield Tr. v. City of L.A.*, 729 F.3d 1189, 1195 (9th Cir. 2013); *see also Cnty. of*

24   *Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

25         Plaintiff amended the complaint to characterize his constitutional injury as a due process

26   right to be free from judicial deception, rather than a constitutional right to familial association.

27   (ECF No. 26 at 23–24.)  A parent has a due process right to be free from deliberately false

28   statements during juvenile court proceedings.  *Keates*, 883 F.3d at 1240.  However, Plaintiff does

                                                      14

1   not provide any authority which establishes the right to be free from judicial deception as a

2   standalone constitutional claim, and in this context, the underlying constitutional deprivation is

3   still a right to familial association.  *See Sigal v. Cnty. of L.A.*, No. 2:17-CV-04851-RGK-AGR,

4   2018 WL 5899636, at *4 (C.D. Cal. Jan. 17, 2018) ("the use of judicial deception to obtain an

5   order to remove a child from his or her parent's custody violates the Fourteenth Amendment due

6   process right to familial association.").

7        Nevertheless, the Court agrees with Defendant that Plaintiff's Fourteenth Amendment

8   claim is "rooted solely in his alleged right to familial association."  However, considering this

9   Court's reversal on the issue of Plaintiff's claim to First Amendment interference with familial

10  relations, this argument is not dispositive.  (*See* ECF No. 28 at 17.)  The Court will consider

11  whether Plaintiff adequately alleges a protected liberty interest of familial association under the

12  Fourteenth Amendment.

13       The Fourteenth Amendment protects "the parent-child relationship from unwanted

14  interference by the state."  *Kirkpatrick*, 843 F.3d at 788.  However, "parental rights do not spring

15  full-blown from the biological connection between parent and child."  *Id.* at 789 (quoting *Lehr*,

16  463 U.S. at 260).  Rather,

17

18       [i]t is when an unwed father demonstrates a full commitment to the
         responsibilities of parenthood by coming forward to participate in the
         rearing of his child, that his interest in personal contact with his child
19       acquires substantial [constitutional protection]. Until then, a person
         with only potential parental rights enjoys a liberty interest in the
20       companionship, care, and custody of his children that is
         unambiguously lesser in magnitude.
21

22  *Kirkpatrick*, 843 F.3d at 789 (internal quotations and citations omitted).  "[T]he mere existence of

23  a biological link does not merit equivalent constitutional protection."  *Lehr*, 463 U.S. at 261.

24  Thus, a person who brings a familial association claim requires a "more enduring" relationship

25  "which reflect[s] some assumption of parental responsibility."  *Kirkpatrick*, 843 F.3d at 788–90

26  (holding father could not challenge the seizure of a child because he had failed to establish his

27  parental rights as of the date of the seizure).

28       A person with potential parental rights enjoys a liberty interest that is "lesser in

                                          15

1   magnitude." *Kirkpatrick*, 843 F.3d at 789.  However, "lesser in magnitude" does not necessarily

2   equate to "negligible" as was the case in *Kirkpatrick*.  In that case, the court held that a biological

3   father's due process rights with respect to the child were negligible because he had minimal

4   contact with the child and made no efforts to be a parent in a constitutional sense at the time of

5   the seizure.  *Id.* at 790.  *Kirkpatrick* can be distinguished from the instant case because here, prior

6   to the termination of parental rights, Plaintiff alleges he tried to locate and contact A.R. but was

7   unsuccessful in doing so.  (ECF No. 26 at 16.)  Furthermore, Plaintiff's efforts to contact Evans

8   and HSA, to assert his biological connection with A.R., and his attempts to prove paternity with a

9   DNA test, all suggest Plaintiff was attempting to establish "some assumption of parental

10  responsibility."[4]

11         Even if Plaintiff's actions were not sufficient to warrant the *substantial* constitutional

12  protections afforded to a father that demonstrate "the full commitment to the responsibilities of

13  parenthood[,]" Plaintiff sufficiently alleged that he was a potential parent with "a liberty interest

14  in the companionship, care, and custody of his children that is "lesser in magnitude."  *Id.* at 790.

15  Accepting all factual allegations as true, and resolving all reasonable inferences in favor of the

16  non-moving party, the Court finds Plaintiff sufficiently states a claim for a constitutional

17  deprivation of a liberty interest and adequately alleges Defendants actions were performed with

18  deliberate indifference to the constitutional rights of Plaintiff.  (*See* ECF No. 26 at 11 ("Defendant

19  Evans knew or reasonably should have known that her allegations about paternity were false . . .

20  [s]he presented perjured declaration to the juvenile court by omitting exculpatory evidence that

21  the father of A.R. is plaintiff.").)  The Court finds that Plaintiff's allegations are sufficient to

22  allege a Fourteenth Amendment substantive due process violation, and Plaintiff's characterization

23  of his liberty interest of familial association as a separate right to be free from judicial deception

24  does not change the analysis for purposes of deciding the instant motion.

25  _____

26  [4]      The Court acknowledges the analysis in ECF No. 25 is not consistent with this Order.
    However, the Court is independently analyzing the current motion, and inasmuch as this Order
27  disagrees with previous interlocutory orders, the Court retains its inherent authority to revise
    interim or interlocutory orders any time before entry of judgment.  *See, e.g.*, *Amarel*, 102 F.3d at
28  1515.

*b) Procedural*

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ.*, 149 F.3d 971, 982 (9th Cir. 1998). As previously discussed, Plaintiff meets the first element by sufficiently alleging a constitutional deprivation of a protected liberty interest in familial association. The Court turns to consider whether Plaintiff was denied adequate procedural protections.

Defendants argue Plaintiff's procedural due process claim fails because Evans is entitled to qualified immunity. (ECF No. 28 at 21.) Plaintiff argues the SAC sufficiently alleges "deliberate or at least reckless acts and omissions of [Evans] which constituted judicial deception and caused Plaintiff to lose his constitutional right to process." (ECF No. 30 at 20–21.)

Pursuant to California Welfare and Institutions Code § 316.2(a),

> At the detention hearing, or as soon thereafter as practicable, the court shall inquire of the mother and any other appropriate person as to the identity and address of all presumed or alleged fathers. The presence at the hearing of a man claiming to be the father shall not relieve the court of its duty of inquiry. The inquiry shall include at least all of the following, as the court deems appropriate:
>
> . . .
>
> (5) Whether any man has formally or informally acknowledged or declared his possible paternity of the child, including by signing a voluntary declaration of paternity.

According to California Welfare and Institutions Code § 316.2(b), each alleged father must be provided notice: (1) he is or could be the father of the child; (2) the child is the subject of proceedings under § 300; and (3) the proceedings could result in the termination of parental rights and adoption of the child.

Plaintiff alleges Evans knew or should have known that Plaintiff could be the biological father of A.R. and he was actively attempting to establish his parental rights. (ECF No. 26 at 6, 8, 15–16.) However, in preparation for the § 366.26 hearing, Evans declared to the juvenile court that despite an inquiry, the father's identity remained unknown. (*Id.* at 9.) Plaintiff alleges Evans acted "deliberately and in reckless disregard of the truth," omitting evidence material to the

1  findings of the juvenile court.  According to Plaintiff, the juvenile court relied on Evans' report,

2  and Plaintiff was deprived of his due process rights as an alleged father as described in § 316.2.

3  (*See id.* at 18.)

4                          *c)   Qualified Immunity*

5          Defendants argue Evans is entitled to qualified immunity because "she reasonably relied

6  on the information E.J. gave her about A.R.'s potential father(s), and, more importantly, it was

7  reasonable for her to rely on K.R.'s signed declaration of paternity."  (ECF No. 28 at 19.)

8          In § 1983 actions, qualified immunity "protects government officials from civil liability

9  where 'their conduct does not violate clearly established statutory or constitutional rights of

10  which a reasonable person would have known.'"  *Cunningham v. Kramer*, 178 F. Supp. 3d 999,

11  1003 (E.D. Cal. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  The doctrine

12  "gives government officials breathing room to make reasonable but mistaken judgments" and

13  "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Ashcroft v.*

14  *al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

15  Qualified immunity is an affirmative defense; the burden of pleading it rests with the defendant.

16  *Crawford-El v. Britton*, 523 U.S. 574, 587 (1998) (citation omitted).

17          Here, the Court finds it cannot conclude that qualified immunity is appropriate at this

18  stage in the proceedings.  Dismissal under Rule 12(b)(6) "is not appropriate unless [the court] can

19  determine, based on the complaint itself, that qualified immunity applies."  *Id.*; *see also Jensen v.*

20  *City of Oxnard*, 145 F.3d 1078, 1085 (9th Cir. 1998).  Defendants' qualified immunity argument

21  is premised on the Court accepting *their assertions* regarding the "reasonableness" of Evans'

22  actions.  (ECF No. 28 at 19.)  At this stage in the proceedings, it is *Plaintiff's* factual allegations

23  that are taken as true, and it is *he* who is to be given the benefit of every reasonable inference

24  from his factual allegations.  *Cruz*, 405 U.S. at 322; *see also Retail Clerks Int'l Ass'n*, 373 U.S. at

25  753 n.6.  Accordingly, Defendants' qualified immunity argument must be rejected.

26          Considering the allegations of the SAC and declining to accept Defendants' qualified

27  immunity argument at this early stage of the litigation, the Court finds Plaintiff adequately states

28  a claim for both substantive and procedural due process violations under the Fourteenth

                                          18

1    Amendment.  Accordingly, the Court DENIES Defendants' Motion as to this claim.

2                    *ii.      Monell Liability Against HSA*

3            Plaintiff alleges HSA[5] "through individual policymakers and/or supervisory officials . . .

4    improperly, inadequately, or with deliberate indifference to the constitutional rights of persons,

5    grossly, negligently, or with reckless disregard for constitutional rights, failed to properly train,

6    supervise, retrain, monitor, or take corrective action" with respect to Evans and Saga-Matsumoto.

7    (ECF No. 26 at 25.)  Defendants argue that Plaintiff's *Monell* claim fails because: (1) Plaintiff

8    cannot show any individual HSA employees committed a constitutional violation and therefore

9    the public entity cannot be liable (citing *City of L.A. v. Heller*, 475 U.S. 796, 799 (1986)); and (2)

10   Plaintiff has failed to allege "any actual policy that was either wrongful or [was] wrongfully

11   ignored by HSA employees."  (ECF No. 28 at 24.)  Plaintiff has adequately stated a claim that

12   Evans committed a constitutional violation, so the Court turns to an examination of whether

13   Plaintiff adequately alleges a policy or practice that amounts to deliberate indifference to the

14   Plaintiff's constitutional rights.

15          To sufficiently plead a *Monell* claim and withstand a Rule 12(b)(6) motion to dismiss,

16   allegations in a complaint "may not simply recite the elements of a cause of action, but must

17   contain sufficient allegations of underlying facts to give fair notice and to enable the opposing

18   party to defend itself effectively." *A.E. ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637

19   (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

20          Where a *Monell* claim is premised on a policy of omission, such as failure to train or

21   supervise, a plaintiff must show: (1) he possessed a constitutional right of which he was deprived;

22   (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to the

23   plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional

24   violation. *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006) (quoting *Oviatt v. Pearce*,

25   954 F.2d 1470, 1474 (9th Cir. 1992); *City of Canton v. Harris*, 489 U.S. 378, 388–91 (1989)).

26

27   _____

       [5]      The SAC refers to COLA/DCFS and COUNTY OF LOS ANGELES/DCFS.  These are
28   not defined terms or parties to this litigation and the Court will assume without deciding that
       Plaintiff is referring to HSA. (ECF No. 26 at 25–31.)

1    A plaintiff "must demonstrate a 'conscious' or 'deliberate' choice on the part of a

2    municipality in order to ultimately prevail on a failure to train claim." *Flores v. Cnty. of L.A.*, 758

3    F.3d 1154, 1158 (9th Cir. 2014) (citing *Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008)).  Under

4    this standard, a plaintiff must allege facts showing that the defendant "disregarded the known or

5    obvious consequence that a particular omission in [its] training program would cause [municipal]

6    employees to violate citizens' constitutional rights." *Id.* (citations and internal quotations

7    omitted, alteration in original).  A "pattern of similar constitutional violations by untrained

8    employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to

9    train," though there exists a "narrow range of circumstances [in which] a pattern of similar

10   violations might not be necessary to show deliberate indifference." *Connick v. Thompson*, 563

11   U.S. 51, 63 (2011).  This "narrow range of circumstances" may exist only when (1) "the need for

12   more or different training is so obvious"; and (2) the inadequacy of training is "so likely to result

13   in the violation of constitutional rights." *Harris*, 489 U.S. at 390 n. 10.

14   Here, Plaintiff alleges a series of "policies, customs, and practices . . . which were in

15   violation of the civil rights of Plaintiff[] and others."  (ECF No. 26 at 27–28.)  Specifically,

16   Plaintiff alleges customs and practice of: (1) ignoring guidelines and state laws that require social

17   workers give notice to the juvenile dependency court when a person holds themselves out to be a

18   biological parent to a child under the jurisdiction of the dependency court; (2) ignoring the

19   communications and complaints of individuals seeking to acknowledge their status as a biological

20   parent; (3) willfully misrepresenting facts to the juvenile dependency court in order to close a

21   case or otherwise arrive at the preferred outcome; and (4) preventing biological parents from

22   reuniting with their minor children without a legal basis.  (ECF No. 30 at 27; *see also* ECF No. 26

23   at 27–29.)

24   Plaintiff's allegations of "policies, customs, and practices" are almost exclusively based

25   on the allegedly unconstitutional actions of Evans and her involvement with A.R.'s dependency

26   proceedings.  Plaintiff does not allege a pattern of similar behavior other than to allege that "by

27   permitting the individual social worker defendants, including [Evans and Saga-Matsumoto], and

28   others, to engage in the unlawful and unconstitutional conduct as herein alleged[,] Plaintiff[] [is]

20

1  informed and believe[s] and thereon allege[s] that the [HSA] has inadequate training . . . ."  (ECF

2  No. 26 at 29.)  As previously discussed, Plaintiff does not allege any specific action by Saga-

3  Matsumoto, and all references to her have been stricken from the SAC.  The only other identified

4  individual in the SAC is Ms. Beverly Louis, assumed to be an HSA employee, who allegedly

5  "advised Plaintiff that she would have [Evans] contact [Plaintiff] the next morning."  (ECF No.

6  26 at 15.)  Evans allegedly failed to contact Plaintiff the next morning.  (*Id.*)  However, such

7  allegations hardly constitute sufficient pleading of a pattern of constitutional violations.

8         Additionally, Plaintiff has not sufficiently alleged a failure to train because allegations of

9  an isolated incident by one actor is not sufficient to put a defendant on "notice that a course of

10  training is deficient in a particular respect," or that the absence of such a course "will cause

11  violations of constitutional rights."  *Flores*, 758 F.3d at 1159; *see also Case v. Kitsap Cnty.*

12  *Sheriff's Dep't*, 249 F.3d 921, 931–32 (9th Cir.2001).  Courts have dismissed *Monell* claims

13  where there is no allegation of a pattern of constitutional violations, or where the allegations do

14  not show that more training would have prevented the violation.  *See, e.g.*, *Hanna ex rel.*

15  *Henderson v. Cnty. of Fresno*, No. 1:14–CV–00142, 2014 WL 6685986, at *13 (E.D. Cal. Nov.

16  26, 2014); *E.G. by & through Lepe v. Maldonado*, No. 5:14–CV–01053, 2014 WL 5472654, at *9

17  (N.D. Cal. Oct. 28, 2014).

18         In sum, the allegations are insufficient to put defendants on notice so that they might

19  appropriately investigate and respond.  Plaintiff has not sufficiently pleaded facts giving rise to a

20  *Monell* claim under a "failure to train" theory.  Therefore, Defendants' Motion to Dismiss

21  Plaintiff's *Monell* claim is GRANTED with leave to amend.

22              D.    Second Motion to Dismiss: State Law Claims

23         Plaintiff asserts the following state law claims: (1) negligence against Evans and HSA

24  (Claim Four); and (2) intentional infliction of emotional distress ("IIED") against Evans (Claim

25  Six).  (ECF No. 26 at 31–36.)  The Court will examine each claim in turn.

26                    i.    *Negligence*

27         Defendants argue Evans is entitled to statutory immunity pursuant to California

28  Government Code § 821.6 ("§ 821.6") and HSA is immune where Evans is immune.  (ECF No.

28 at 21–23.)  Defendants further argue Plaintiff fails to allege any facts arising within the limited

exception to immunity in Government Code § 820.21.  Plaintiff fails to rebut Defendants'

arguments in opposition.  (*See* ECF No. 30.)  The Court will address Defendants' arguments in

turn.

a)      *California Government Code §§ 821.6 and 820.21*

Section 821.6 provides: "[a] public employee is not liable for injury caused by his

instituting or prospecting any judicial or administrative proceeding within the scope of his

employment, even if he acts maliciously and without probable cause."  Cal. Gov't Code § 821.6.

California courts have held § 821.6 "provides complete immunity for social workers (and a

county) for their actions taken to investigate, declare children dependents of the county, and cause

their removal from parental control."  *Ronald S. v. Cnty. of San Diego*, 16 Cal. App. 4th 887, 899

(1993).  The immunity provided by § 821.6 is broad.  *See Gabrielle A. v. Cnty. of Orange*, 10 Cal.

App. 5th 1268, 1285 (2017), *as modified* (Apr. 18, 2017) ("Immunity applies even to 'lousy'

decisions in which the worker abuses his or her discretion, including decisions based on 'woefully

inadequate information.'") (citations and internal quotation marks omitted); *see also Masoud v.*

*Cnty. of San Joaquin*, No. CIV. S-06-1170 FCD EFB, 2006 WL 3251797, at *7 (E.D. Cal. Nov.

8, 2006) ("California courts have applied these immunities quite expansively to social workers,

and the protection afforded by these statutes is arguably much broader than the [quasi-

prosecutorial or quasi-judicial] federal immunity.").

Section 820.21, however, provides for an exception to § 821.6 immunity.  More

specifically, § 820.21 abrogates immunity for: (1) perjury; (2) fabrication of evidence; (3) failure

to disclose known exculpatory evidence; or (4) obtaining testimony by duress, fraud, or undue

influence — if committed with malice.  Cal. Gov't Code § 820.21(a); *see Beltran v. Santa Clara*

*Cnty.*, 514 F.3d 906, 908 (9th Cir. 2008) (holding social workers "are not entitled to absolute

immunity from claims that they fabricated evidence during an investigation or made false

statements in a dependency petition affidavit that they signed under penalty of perjury" and

reversing dismissal of claim where "much of the information" contained in a dependency petition

signed under penalty of perjury was allegedly fabricated); *but see Gabrielle A.*, 10 Cal. App. 5th

1    at 1286–87 (on summary judgment, granting immunity where allegations were "heavy on

2    speculation and light on facts" and therefore insufficient to establish malice).

3         Malice is defined as "conduct that is intended by the person described in subdivision (a) to

4    cause injury to the plaintiff or despicable conduct that is carried on by the person described in

5    subdivision (a) with a willful and conscious disregard of the rights or safety of others."  Cal.

6    Gov't Code § 820.21(b).  Thus, not only must the act fall into one of the enumerated categories,

7    but it must also be committed with malice.  *Id* at § 820.21(a).  "This is a high bar to clear."

8    *Gabrielle A.*, 10 Cal. App. 5th at 1285.

9                                        *b)     Evans*

10        As an initial matter, the Court finds § 821.6's expansive application of immunity applies

11   to Evans's actions with respect to investigating A.R.'s case and presenting information to the

12   juvenile dependency court.  *Gabrielle A.*, 10 Cal. App. 5th at 1285.  Plaintiff fails to respond to

13   Defendants' arguments for dismissal of the negligence claim.  (*See* ECF No. 30.)  However, the

14   Court will analyze whether § 820.21's exception to immunity would permit Plaintiff to state a

15   state law claim for negligence.

16        In opposition to Defendants' previous motion to dismiss, Plaintiff argued § 821.6

17   immunity is inapplicable under § 820.21 because Evans maliciously committed perjury and/or

18   failed to disclose known exculpatory evidence.  (ECF No. 17 at 22–23.)  Here, the SAC similarly

19   includes allegations that Evans maliciously fabricated evidence.  (ECF No. 26 at 9– 19.)

20   Defendants argue Plaintiff fails to adequately allege malice, or facts supporting any of the actions

21   falling under the § 820.21 exception to immunity: (1) perjury; (2) fabrication of evidence; and (3)

22   failure to disclose known exculpatory evidence.

23        California Penal Code § 118(a) defines perjury as willfully testifying in a false manner,

24   knowing the testimony is false.  In support of the allegation that Evans "knew" Plaintiff was

25   A.R.'s biological father, Plaintiff alleges: (1) the witness statements he and E.J. provided to the

26   police in 2012 both state Plaintiff was the father of E.J.'s then unborn child (A.R.) (ECF No. 26 at

27   8); (2) K.R. told the juvenile dependency court at the April 3, 2013 detention hearing that he was

28   not A.R.'s true father, and his name was not listed on the birth certificate HSA obtained (*id.*); and

1  (3) Plaintiff told Defendants that he was A.R.'s biological father in 2013, and again in April 2015

2  (*id.* at 15–16).  Accepting Plaintiff's allegations as true, and resolving all inferences in favor of

3  Plaintiff, the Court finds the SAC adequately alleges that Evans knew, or reasonably should have

4  known that Plaintiff was at least a potential father of A.R., but testified to the juvenile court in a

5  false manner knowing the testimony was false.  (ECF No. 26 at 10.)  Defendants argue that

6  Plaintiff's allegations can alternatively be explained as Evans' mistaken ignorance of a police

7  report which is not perjury.  At this stage in the proceedings, it is *Plaintiff's* factual allegations

8  that are taken as true, and it is *he* who is to be given the benefit of every reasonable inference

9  from his factual allegations.  *Cruz*, 405 U.S. at 322; *see also Retail Clerks Int'l Ass'n*, 373 U.S. at

10  753 n.6.  The Court finds that Plaintiff adequately alleges that Evans committed perjury and

11  therefore a discussion of the remaining § 820.21 exceptions is unnecessary.

12  Defendant argues that Plaintiff fails to allege any facts to support his conclusory

13  allegations of malice.  (ECF No. 28 at 22.)  The Court agrees that Plaintiff's allegations, if they

14  can be construed as malice, are merely "threadbare recitals" of a cause of action which are

15  insufficient.  *See Iqbal*, 556 U.S. at 678.  According to Plaintiff, Evans acted "deliberately and

16  with reckless disregard of the truth[,] intentionally made false statements[,] and/or omitted

17  exculpatory evidence that was material to the findings of the juvenile court."  (ECF No. 26 at 10.)

18  Plaintiff also provides a vague conclusory statement in the introduction to the SAC, "Defendants'

19  wrongful conduct as herein alleged was intentional, done with malice and with conscious

20  disregard for the rights of the Plaintiff herein . . . ."  (ECF No. 26 at 19.)  The Court finds that

21  Plaintiff's non-conclusory allegations do not rise to the level of "conduct that is intended by

22  [Defendants] . . . to cause injury to [Plaintiff] or despicable conduct that is carried on by

23  [Defendants] with a willful and conscious disregard of the rights or safety of others."  Cal. Gov't

24  Code § 820.21(b).  The Court finds Plaintiff —despite alleging perjury — fails to allege the

25  requisite element of malice under § 820.21, and therefore Evans is entitled to statutory immunity

26  under § 821.6.

27  Therefore, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's claim for

28  negligence against Evans with leave to amend.

24

1                                           *c)*       HSA

2              In light of the Court's ruling on Plaintiff's negligence claim against Evans, Plaintiff's

3     derivative claim against HSA fails.  *See Gabrielle A.*, 10 Cal. App. 5th at 1285 (citing Cal. Gov't

4     Code § 815.2(b) ("Except as otherwise provided by statute, a public entity is not liable for an

5     injury resulting from an act or omission of an employee of the public entity where the employee

6     is immune from liability.")).

7              Plaintiff offers no contrary argument, and the Court GRANTS Defendants' Motion to

8     Dismiss Plaintiff's claim for negligence against HSA with leave to amend.

9                                          *ii.*       IIED

10            Plaintiff argues Evans and HSA caused Plaintiff to suffer emotional distress by:

11    misleading "the [juvenile] court into believing that the father was unknown"; failing to provide

12    adequate notice to plaintiff of the dependency proceedings; and failing to disclose to the juvenile

13    court Plaintiff's efforts to establish paternity, and his efforts to obtain DNA evidence to prove his

14    paternity.  (ECF No. 26 at 35.)  Defendants assert that Evans is once again entitled to immunity

15    under § 821.6.  (ECF No. 28 at 21.)  Additionally, Defendants argue Plaintiff's allegations in

16    support of his IIED claim are conclusory and do not constitute the kind of extreme and

17    outrageous conduct that "exceed[s] all bounds that are usually tolerated in a civilized community"

18    as required to state a claim for IIED.  (ECF No. 28 at 25–26 (citing *Schlauch v. Hartford Accident

19    & Indem. Co.*, 146 Cal. App. 3d 926 (1983)).)  Finally, Defendants argue Plaintiff fails to

20    sufficiently plead the intent element of an IIED claim because Plaintiff does not allege "why

21    [Evans] would want to harm him, that she intended to cause him harm, or how her actions were in

22    reckless disregard of Plaintiff or that [Evans] realized her actions would result in harm to

23    Plaintiff."  (ECF No. 28 at 25.)

24            Plaintiff argues "motive is not an element" of an IIED claim and it is sufficient that

25    Plaintiff alleges Evans acted with intention and reckless disregard, her motive for doing so is

26    immaterial.  (ECF No. 30 at 28.)

27            An IIED claim requires (1) extreme and outrageous conduct by the defendant, (2) with the

28    intention of causing, or reckless disregard of the probability of causing emotional distress, (3) the

1    plaintiff's suffering severe or extreme emotional distress, and (4) actual and proximate causation

2    of the emotional distress by defendant's outrageous conduct.  *Sabow v. United States*, 93 F.3d

3    1445, 1454 (9th Cir. 1996) (citing *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991)).  A

4    claim for IIED under California law requires the plaintiff to establish "extreme and outrageous

5    conduct by the defendant with the intention of causing, or reckless disregard [for] the probability

6    of causing, emotional distress."  *Nunes v. Cnty. of Stanislaus*, No. 1:17-cv-00633- DAD-SAB,

7    2017 WL 3670926, at *6 (E.D. Cal. Aug. 25, 2017) (quoting *Ravel v. Hewlett-Packard Enter.,*

8    *Inc.*, 228 F. Supp. 3d 1086, 1099 (E.D. Cal. 2017)) (alteration in original).  To amount to extreme

9    and outrageous conduct, the actions "must be so extreme as to exceed all bounds that are usually

10   tolerated in a civilized community."  *Id.* (quoting *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494

11   (1998)); *see Hamilton v. Prudential Fin.*, No. 2:07-cv-00944-MCE-DAD, 2007 WL 2827792, at

12   *3 (E.D. Cal. Sept. 27, 2007) ("On the spectrum of offensiveness, outrageous conduct is the most

13   extreme or severe form of offensiveness, and anything less is without legal recourse." (citation

14   omitted)).

15          Plaintiff's IIED claim appears to be based on the same allegations that support Plaintiff's

16   negligence claim.  For the same reasons discussed with respect to Plaintiff's negligence claim, §

17   821.6 applies.  Plaintiff fails to address the issue of immunity in opposition.  (*See* ECF No. 30.)

18   The same lack of factual allegations that preclude a finding of "malice" under § 820.21 are also

19   fatal to the intent element of Plaintiff's IIED claim.  Moreover, the Court is not persuaded

20   Plaintiff has established the causation or extreme and outrageous elements of the claim based on

21   the aforementioned factual allegations.  *See Schlauch*, 146 Cal. App. 3d 926, 936 (1983) (finding

22   mere assertion that defendant "acted outrageously and with intent to inflict emotional distress . . .

23   does not in itself constitute the type of outrageous conduct which will support" an IIED claim).

24   Plaintiff makes conclusory statements that Evans' conduct "was outrageous," and Evans conduct

25   was "intended to cause Plaintiff's emotional distress."  (ECF No. 26 at 36.)  Conclusory and

26   threadbare recitals of the IIED elements are not sufficient to state a claim for relief.  *See Iqbal*,

27   556 U.S. at 678.

28          Section 821.6's application of immunity applies to Evans's actions with respect to

1  investigating A.R.'s case and presenting information to the juvenile dependency court.  *See*

2  *Gabrielle A.*, 10 Cal. App. 5th at 1285.  Plaintiff's IIED claim based on such allegations is

3  necessarily barred by immunity.  It follows that Plaintiff's derivative IIED claim against HSA

4  fails.  *See Gabrielle A.*, 10 Cal. App. 5th at 1285 (citing Cal. Gov't Code § 815.2(b) ("Except as

5  otherwise provided by statute, a public entity is not liable for an injury resulting from an act or

6  omission of an employee of the public entity where the employee is immune from liability.")).

7      The Court GRANTS Defendants' Motion to Dismiss Plaintiff's claim for IIED against

8  Evans and HSA with leave to amend.

9      **IV.   CONCLUSION**

10      For the foregoing reasons, the Court hereby REVERSES its previous March 31, 2021

11  Order (ECF No. 25) and DENIES Defendants' First Motion to Dismiss (ECF No. 13) with

12  respect to Plaintiff's cause of action for First Amendment interference with familial association;

13  GRANTS in part and DENIES in part Defendants' Motion to Strike (ECF No. 27); and GRANTS

14  in part and DENIES in part Defendants' Motion to Dismiss (ECF No. 28) as follows:

15      1.  Defendants' First Motion to Dismiss (ECF No. 13) Plaintiff's claim for First Amendment

16          interference with familial association (Claim One) is DENIED, reversing the Court's

17          previous March 31, 2021 Order (ECF No. 25);

18      2.  Defendants' Motion to Strike (ECF No. 27) Plaintiff's claim for First Amendment

19          interference with familial association (Claim One) is DENIED;

20      3.  Defendants' Motion to Strike (ECF No. 27) Plaintiff's claim for negligent hiring,

21          retaining, and training (Claim Five) is GRANTED;

22      4.  Defendants' Motion to Strike (ECF No. 27) Plaintiff's claim for NIED (Claim Seven) is

23          GRANTED;

24      5.  Defendants' Motion to Strike (ECF No. 27) all references to Saga-Matsumoto as

25          contained in paragraphs 10, 40, 53, 56, 63, 67, 69 through 74, 80, and 84, and as a named

26          Defendant in the first, second, fourth, and seventh claims for relief in Plaintiff's SAC is

27          GRANTED;

28      6.  Defendants' Motion to Dismiss (ECF No. 28) Plaintiff's claim for violations of procedural

and substantive due process under the Fourteenth Amendment (Claim Two) is DENIED;

7.  Defendants' Motion to Dismiss (ECF No. 28) Plaintiff's claim for § 1983 *Monell* liability (Claim Three) is GRANTED with leave to amend;

8.  Defendants' Motion to Dismiss (ECF No. 28) Plaintiff's negligence claim (Claim Four) is GRANTED with leave to amend as asserted against both Evans and HSA; and

9.  Defendants' Motion to Dismiss (ECF No. 28) Plaintiff's claim for IIED (Claim Six) is GRANTED with leave to amend as asserted against both Evans and HSA.

Plaintiff may file an amended complaint not later than thirty (30) days from the date of electronic filing of this Order.  Defendants' responsive pleading is due twenty-one (21) days after the electronic filing date of Plaintiff's amended complaint.

IT IS SO ORDERED.

**DATED:**  March 29, 2022

Troy L. Nunley
United States District Judge

28